874 P.2d 603

Victor RETAMOZA, Petitioner–Appellant,

v.

STATE of Idaho, Respondent.

No. 20350.

Court of Appeals of Idaho.

May 13, 1994.

---

Jonné E. Kohler, Nampa, for petitioner-appellant.

Larry EchoHawk, Atty. Gen., Thomas P. Watkins, Deputy Atty. Gen., argued, Boise, for respondent.

LANSING, Judge.

This is an appeal from the district court's denial of Victor Retamoza's application for post-conviction relief. For the reasons stated below, we affirm.

## I. FACTS

In January 1988, Victor Retamoza entered a plea of guilty to a charge of first degree burglary, I.C. §§ 18–1401, 18–1402,[1] and was sentenced to a minimum of seven years and a maximum of fourteen years of confinement. He took no direct appeal. In August 1991, Retamoza filed an application for post-conviction relief under I.C. § 19–4901, alleging that he should be allowed to withdraw his guilty plea because his primary language is Spanish and he did not understand the court interpreter's translation of the proceedings when he pled guilty and was sentenced. Retamoza also claimed he received ineffective assistance of counsel in that his defense attorney did not inform him of the opportunity to request a recommendation from the trial court to federal authorities that Retamoza not be deported.

---

1. I.C. § 18–1402, which drew a distinction between first and second degree burglary, was repealed in 1992.

The district court conducted an evidentiary hearing on November 5, 1992, but denied Retamoza's request to be transported to the Canyon County courthouse for the hearing.[2] Neither the state nor Retamoza presented live testimony at the hearing. The only evidence before the court was Retamoza's affidavit and verified application, the affidavits of third parties indicating that other defendants had also misunderstood matters that were explained by the same interpreter, and transcripts of various hearings conducted in Retamoza's criminal case. The district court denied the requested relief and dismissed the application.

## II. ANALYSIS

Our standard of review of the trial court's decision in post-conviction cases is well defined:

> An application for post-conviction relief is a special proceeding, civil in nature. *State v. Bearshield,* 104 Idaho 676, 662 P.2d 548 (1983). In order to prevail in such an action, the applicant must prove his allegations by a preponderance of the evidence. *Stuart v. State,* 118 Idaho 865, 801 P.2d 1216 (1990). When reviewing a decision denying a petition for post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State,* 118 Idaho 65, 794 P.2d 654 (Ct.App.1990). The role of the reviewing court is to determine whether there was substantial evidence to support the trial court's findings. *Holmes v. State,* 104 Idaho 312, 658 P.2d 983 (Ct.App.1983).... On appeal, when faced with mixed questions of fact and law, we will defer to the factual findings made by lower courts if those determinations are based upon substantial evidence, but we will exercise free review of the application of the relevant law to those facts. *Young v. State,* 115 Idaho 52, 764 P.2d 129 (Ct. App.1988).

*Murray v. State,* 121 Idaho 918, 921–22, 828 P.2d 1323, 1326–27 (Ct.App.1992). With these standards in mind, we consider each of Retamoza's claims of error.

### A. *Alleged Deficiencies in Translation of Criminal Proceedings*

Retamoza's evidence indicates that he does not "read, speak or understand the English language." Retamoza first contends that he should be allowed to withdraw his guilty plea because he could not understand the interpreter's Spanish translation of the criminal proceedings, and therefore Retamoza did not comprehend the charges against him, his rights that were waived by his guilty plea, or the consequences of the plea. He also asserts he did not understand the plea agreement he signed.

■ Prior to accepting a guilty plea, a trial court must satisfy itself that the plea is offered voluntarily, knowingly, and intelligently. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Colyer,* 98 Idaho 32, 557 P.2d 626 (1976). Although not specifically articulated as such in his brief on appeal, we view Retamoza's allegation to be that his guilty plea was not entered knowingly, i.e., that Retamoza lacked a full understanding of what the plea connotes and of its consequences.

■ In ruling upon Retamoza's application for post-conviction relief, the district court found that Retamoza understood the criminal proceedings as translated by the interpreter, Estella Zamora, including explanations of his rights. In rendering its decision, the district court observed that, "The court, having known Estella Zamora in her position as interpreter for the courts over the years, is confident that Estella Zamora completely translates Spanish from English and English from Spanish." Retamoza argues that the trial judge is not bilingual and therefore could have no first-hand knowledge of the interpreter's ability. While we agree that such observations of the interpreter's work by the trial court in other cases is not dispositive, we find no error in the trial court's considering its general experience with and

---

**2.** Retamoza does not assign as error the refusal of his request to be transported for the evidentiary hearing. Regardless of this order, he was free to introduce evidence by other means, such as affidavits and depositions. I.C. § 19–4907.

observation of the interpreter's effectiveness where that experience is extensive enough to give the court insight into the interpreter's level of skill.

The district court based its denial of Retamoza's application partially upon the content of transcripts of the proceedings in the criminal case. The court found that those transcripts contained nothing to indicate that Retamoza did not understand the interpreter or the content of the proceedings. Retamoza contends that his failure to apprise the court of his difficulty in understanding the interpreter may not be considered as evidence that he understood the proceedings and the rights he was waiving. Retamoza relies upon *Gonzales v. State,* 120 Idaho 759, 819 P.2d 1159 (Ct.App.1991), where this Court held that requiring the defendant to interrupt and inform the court if he did not understand the proceedings placed an unfair burden on the defendant. Retamoza's reliance upon *Gonzales* is misplaced. In that case, the defendant's primary language was Spanish, but he understood a good deal of English. Because Gonzales was able to understand much of what was spoken in English and respond in English, the trial court decided not to have every statement in the proceedings translated, but, rather, told Gonzales to interrupt whenever he did not understand so that the interpreter could translate for him. The problem presented in *Gonzales* was not that the defendant could not understand the interpreter, but, rather, that he may have believed he understood some of the dialog in English when in fact he did not. By contrast, in Retamoza's criminal case all of the proceedings were translated into Spanish for his benefit. Unlike Gonzales, Retamoza was not required to make a judgment as to whether he had a correct understanding of statements made in English. If Retamoza was unable to understand the interpreter by reason of differences in dialect, accent or other problems, he would have been aware at the time of his own inability to understand.

However, we do not opine, nor did the district court hold, that Retamoza's failure to bring to the court's attention any alleged problems in understanding the interpreter would, standing alone, constitute sufficient evidence that he understood the proceedings. The district court based its finding that the interpreter had translated accurately, and that Retamoza was able to understand her, upon the full content of the transcripts of at least three hearings in the criminal case. These transcripts, according to the district court's findings, showed that Retamoza had participated in colloquy and made appropriate responses to questions, which indicated that he understood the comments and questions that were directed to him.

■ The district court's findings that the interpreter translated accurately and that Retamoza understood the translation are findings of fact, and will not be disturbed on appeal unless clearly erroneous. Meaningful appellate review of these findings would require review of the transcripts upon which the district court relied. These have not been provided on appeal. It is axiomatic that an appellant bears the burden of providing an adequate record to substantiate his or her claims before the appellate court. *State v. Beason,* 119 Idaho 103, 803 P.2d 1009 (Ct.App.1991); *State v. Murinko,* 108 Idaho 872, 702 P.2d 910 (Ct.App.1985). In the absence of an adequate record on appeal, we will not presume error. *Id.* Rather, missing portions of the record must be presumed to support the action of the trial court. *Kugler v. Drown,* 119 Idaho 687, 690, 809 P.2d 1166, 1169 (Ct.App.1991). Accordingly, we are constrained to conclude that the district court's finding that Retamoza understood the interpreter's translation of the criminal proceedings is supported by substantial and competent evidence.

B. *Alleged Ineffective Assistance of Counsel*

We next turn to Retamoza's contention that he received ineffective assistance of counsel in that his attorney did not inform him of the opportunity to request a judicial recommendation against deportation (JRAD). At the time of Retamoza's plea, federal immigration law provided that a trial judge, state or federal, could prevent the use of a conviction as a basis for deportation if the court recommended against deportation within thirty days of sentencing and notified appropriate federal authorities. 8 U.S.C.

§ 1251(b)(2) (1988).[3] Retamoza's appointed counsel did not request a JRAD from the trial judge at the sentencing hearing or at any time thereafter and did not discuss the opportunity for a JRAD with Retamoza. Retamoza asserts that his counsel's failure to advise him regarding the possibility of a JRAD constitutes ineffective assistance of counsel and taints Retamoza's guilty plea.

■ A claim of ineffective assistance of counsel presents mixed questions of fact and law. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When presented with such questions on appeal, we defer to the factual findings of the lower court if they are based upon substantial evidence, but we exercise free review of the application of the relevant law to those facts. *Young v. State*, 115 Idaho 52, 764 P.2d 129 (Ct.App.1988).

■ Claims of ineffective assistance of counsel are evaluated under the two-part test set forth in *Strickland.* The convicted defendant must establish both that counsel's representation fell below an objective standard of reasonableness and that the defendant was prejudiced thereby. *Strickland*, 466 U.S. at 687–88, 694, 104 S.Ct. at 2064, 2068; *Parrott v. State*, 117 Idaho 272, 274–75, 787 P.2d 258, 260–61 (1990). There is a strong presumption that counsel's performance falls within the wide range of professional assistance, and the defendant bears the burden of proving that counsel's representation fell below an objective standard of reasonableness. *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989).

■ A defendant's Sixth Amendment right to effective assistance of counsel extends to all critical stages of the prosecution where his substantial rights may be affected, and sentencing is one such stage. *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967). The right to competent counsel attaches also when the defendant is deciding whether to plead guilty. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). *See generally McMann v. Richardson*, 397 U.S. 759, 769–72, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970).

There is disagreement among the state and federal courts as to whether counsel's failure to advise a client about the possibility of deportation or of the opportunity to request a JRAD renders counsel's assistance constitutionally deficient. A number of authorities hold that such failing does not constitute ineffective assistance of counsel, often basing their decisions upon the rationale that counsel's obligation to advise regarding the consequences of a guilty plea or conviction encompasses only direct consequences, not collateral consequences such as deportation. *See, e.g., United States v. Santelises*, 509 F.2d 703 (2d Cir.1975); *United States v. Yearwood*, 863 F.2d 6 (4th Cir.1988); *United States v. Gavilan*, 761 F.2d 226 (5th Cir. 1985); *Santos v. Kolb*, 880 F.2d 941 (7th Cir.1989); *United States v. Campbell*, 778 F.2d 764 (11th Cir.1985); *State v. Ginebra*, 511 So.2d 960 (Fla.1987); *Mott v. State*, 407 N.W.2d 581 (Iowa 1987); *State v. Santos*, 401 N.W.2d 856 (Wis.Ct.App.1987). Other courts have concluded that an attorney's failure to request a JRAD or otherwise advise a defendant regarding the risk of deportation constitutes ineffective assistance and requires that the guilty plea or sentence be set aside. *E.g., Janvier v. United States*, 793 F.2d 449 (2nd Cir.1986); *People v. Barocio*, 216 Cal. App.3d 99, 264 Cal.Rptr. 573, (1990); *People v. Pozo*, 712 P.2d 1044 (Colo.Ct.App.1985); *Lyons v. Pearce*, 298 Or. 554, 694 P.2d 969 (1985).

■ While we have not previously considered the precise issue before us, we have held that it is not necessary for defense counsel to advise the defendant regarding all collateral consequences of a guilty plea. In *Carter v. State*, 116 Idaho 468, 776 P.2d 830 (Ct.App.1989), we held that the criminal defendant had not been deprived of effective representation where he pled guilty to a felony without having been informed by his attorney that the conviction could lead to a persistent violator status if the defendant thereafter committed one or more subsequent felonies. We noted that the possibility of future persistent violator status is a collateral, rather than a direct, consequence of a guilty plea, and we adopted the rule recog-

---

**3.** JRADs are no longer available as this portion of the statute was repealed in 1991. Immigration Act of 1990, Pub.L. No. 101–649, § 505(a), 104 Stat. 5047, 5050 (1990).

nized by many other jurisdictions that the Sixth Amendment implies no duty for an attorney to inform his client of collateral consequences of a guilty plea.

 Applying the rationale of *Carter*, we are persuaded to follow those authorities holding that the omission of a JRAD request does not establish ineffectiveness of counsel. We hold that the opportunity for a JRAD is a matter collateral to the criminal proceeding, to which the Sixth Amendment right to effective assistance of counsel does not extend.

We are not asked to address whether other aspects of an attorney's advice with respect to deportation consequences of a conviction could support a claim of ineffective assistance of counsel. We note that Retamoza does not contend that his attorney affirmatively misrepresented the effect that a conviction could have on Retamoza's immigration status. Nor does Retamoza claim that he was unaware that deportation could result from his conviction; indeed, at sentencing he requested deportation in lieu of imprisonment.[4]

We emphasize also that the issue before us is not whether an attorney *should* inform a client of indirect consequences of a guilty plea. It is generally desirable that defendants be advised of significant collateral consequences of pleading guilty. However, what is desirable or optimal does not define that which is constitutionally mandated. The issue here is whether the failure to advise a defendant of the opportunity to request a JRAD results in a deprivation of the constitutional right to counsel sufficient to allow a defendant to withdraw an otherwise valid guilty plea. We hold that it does not.

For the reasons stated above, the order of the district court denying post-conviction relief is affirmed.

WALTERS, C.J., and PERRY, J., concur.

---

4. Parenthetically, we also note that Retamoza has not even established that he is at risk of deportation as a result of his conviction. He has not presented evidence that deportation proceedings have been, or will in the future be, initiated, nor has he shown that his crime was committed within five years after his entry into the country, which is one of the criteria for deportation under the federal statute. 8 U.S.C. § 1251(a)(2).