976 P.2d 927

**Rick G. HOLLON, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 23861.**

Supreme Court of Idaho,
Twin Falls, November 1998 Term.

March 8, 1999.

Rehearing Denied May 18, 1999.

John A. Olson, Twin Falls County Public Defender; Paul E. Riggins, Deputy Public Defender, Twin Falls, for appellant. Paul E. Riggins argued.

Hon. Alan G. Lance, Attorney General; Kenneth M. Robins, Deputy Attorney General, Boise, for respondent. Kenneth M. Robins argued.

TROUT, Chief Justice.

This is an appeal from the district court's order denying Rick G. Hollon's (Hollon) claims for post-conviction relief following an evidentiary hearing. We affirm the district court.

## I.

## BACKGROUND

On or about February 27, 1994, Hollon drove past the home of Julie Fender (Fender) in Filer, Idaho. Hollon then left to get a 12–gauge shotgun and then returned to Fender's residence. After waiting and watching outside Fender's home for two hours, Hollon entered her home by crawling though a window with the loaded 12–gauge shotgun. Hollon entered Fender's bedroom, turned on the lights and found Fender in bed with Richard Thompson (Thompson). Hollon pointed the 12–gauge shotgun at the wall above Fender and Thompson's heads and discharged the shotgun, blowing a hole in the wall above their heads as they laid in bed. For approximately three hours, Hollon remained in Fender's bedroom and conversed with the two victims. Hollon talked about his problems and stated that he wanted Thompson to leave Fender alone because she was his "property." The victims ultimately convinced Hollon that Thompson would no longer be at Fender's home, that Fender would reunite with Hollon and that she would call him after work that day if he would put down the shotgun and leave. Hollon eventually left Fender's home but was later arrested and charged with burglary, two counts of aggravated assault with a deadly weapon and two counts of kidnaping in the first degree.

Sometime in March of 1994, Hollon hired Keith Roark, Esq., (Roark) to represent him. During discussions on how to proceed with the case, Roark presented Hollon with a plea agreement Roark had negotiated with the prosecuting attorney. Initially, Hollon agreed to accept the plea agreement but later changed his mind. Upon learning that Hollon was not willing to accept the plea agreement but wanted to proceed to trial, Roark informed Hollon that he would not represent him in a trial, believing that if Hollon went to trial, he would likely spend the remainder of his life in prison. The next time Roark visited Hollon, Hollon had again changed his mind and wanted to accept the plea agreement. In July of 1994, Hollon pled guilty to one count of assault, one count of kidnaping and one count of an extended sentence for use of a firearm or a deadly weapon. Hollon was sentenced to a five year determinate period and ten years indeterminate, not to exceed fifteen years.

Hollon filed a petition for post-conviction relief on August 30, 1995 and later an amended petition for post-conviction relief on January 7, 1997. Hollon asserted ineffective assistance of counsel and that the district court had failed to properly apply the requirements of I.C. § 19–2523 in imposing judgment and sentence upon him. After an evidentiary hearing on the post-conviction issues and briefing by the parties, the district

court entered an order denying both of Hollon's claims. Hollon now appeals to this Court asserting that the district court erred in denying his post-conviction relief petition.[1]

## II.

### INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Hollon asserts that his defense counsel provided ineffective assistance on approximately four different grounds. The district court found that there had been effective assistance on each of the grounds. We affirm the district court as to each of Hollon's claims of ineffective assistance of counsel.

### A. Applicable Law and Standard of Review

■ To demonstrate ineffective assistance of counsel, Hollon must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To demonstrate that counsel's performance was deficient, Hollon must show that his counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). There is a "strong presumption that counsel's conduct falls within the wide range of acceptable professional assistance...." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. In order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. The burden is on the defendant to prove a claim of ineffective assistance of counsel. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177.

■ Lastly, when evaluating an ineffective assistance of counsel claim, strategic and tactical choices should not be second-guessed. *Id.* It is presumed that counsel is competent and that trial tactics were based on sound legal strategy. *Id.*

■ In an appeal from an ineffective assistance of counsel claim, the appellate court reviews the district court's factual findings to determine whether they were clearly erroneous. *State v. Wood*, 132 Idaho 88, 95, 967 P.2d 702, 709 (1998). The reviewing court, however, exercises free and independent review of the district court's application of law. *Id.*

### B. Coercion by Counsel

■ Hollon's main complaint is that, after Hollon informed Roark that he wanted to proceed to trial, Roark threatened to withdraw, therefore coercing his guilty plea and rendering it invalid. Hollon also asserts that because of his inexperience with the criminal justice system, he was unable to explain to the judge at the plea hearing that he felt coerced into entering a guilty plea by counsel's threats of withdrawal. The record clearly indicates that Hollon's counsel told him he would withdraw if Hollon went to trial. However, the hearing on the change of plea also demonstrates that Hollon was given

---

1. Hollon attempted to raise on appeal the issue of the voluntariness of his plea, asserting that Roark's threat to withdraw if Hollon decided to take his case to trial coerced his guilty plea. However, Hollon did not raise voluntariness as an issue in his amended post-conviction petition, nor did the district court address the issue of voluntariness. Issues presented for the first time on appeal will not be considered. *Sun Valley Shopping Ctr. Inc. v. Idaho Power Co.*, 119 Idaho 87, 93, 803 P.2d 993, 999 (1991). In Hollon's amended petition, Hollon raised the issue of coercion, but did so under the heading of "Ineffective Assistance of Counsel." Hollon did not make a claim that his plea was involuntary in the amended petition. In his original petition,

Hollon alleged that his guilty plea was entered involuntarily as a separate issue, but where a complaint is amended, it takes the place of the original complaint. *Andrews v. Moore*, 14 Idaho 465, 94 P. 579 (1908). In addition, the district court's opinion on the petition for post-conviction relief clearly states that in the amended petition, Hollon raised only two issues: whether the court properly applied I.C. § 19–2523 and whether Hollon received ineffective assistance of trial counsel. The district court addressed the issue of the plea under the standard applied for ineffective assistance of counsel claims and not as an additional separate issue. Consequently, because Hollon did not properly raise the issue below, we will not now consider it on appeal.

ample opportunity to express whether he felt coerced into entering the plea.[2]

Hollon does not support his allegations of ineffective assistance with anything beyond the threat of counsel to withdraw and his inexperience with the criminal justice system. For instance, he does not assert that there was insufficient time for a new attorney to be appointed who could adequately represent him at trial or that Roark did not make him aware that new counsel could be appointed. Hollon's main contention appears to be that he wanted his chosen attorney to represent him at trial and if his attorney was not willing to do so, he was prepared to forego his right to a trial.[3]

Someone in Hollon's position might feel that they were being abandoned by counsel upon whom they had come to trust and depend. However, in a situation such as this one, if counsel feels that they cannot support a client's choice, that counsel should be allowed to withdraw, without then rendering a client's subsequent decision to enter into a guilty plea, involuntary. Additionally, Hollon's inexperience with the criminal justice system should not excuse his unwillingness to state at his plea hearing that he felt coerced by Roark's threats. The district court clearly explained to Hollon that the decision must be his own. Hollon does not indicate that he had been told by Roark that he was not to mention the threat to withdraw. Instead he admitted at the evidentiary hearing that "basically I hadn't been forced; but I wasn't happy with the idea. But I didn't know it was against the law for somebody to threaten to quit on you."

As the Fifth Circuit Court of Appeals stated in a similar case:

We have here an attorney who on the record is acting in good faith and affording sound representation when he decides that a client should plead guilty under a plea bargain. The client indicates doubt. Without question, the attorney has the right to ask the court to allow him to withdraw as counsel and have another counsel appointed if the client refuses to plead. He has given his best advice. He thinks the insistence of his client that the case go to trial is foolhardy. He has done what he can, and he wants to ask to be relieved so that another attorney more sympathetic to trial be appointed in his stead. Having that right, whether or not the court in its discretion would grant the request, it would be improper and unethical not to warn his client that this was the course of conduct he would follow if the client refused to accept the plea bargain. Withholding this information would withhold a material and significant fact from the accused when the accused was undertaking to decide whether or not to accept the plea bargain.

*Uresti v. Lynaugh,* 821 F.2d 1099, 1102 (5th Cir.1987) (citations omitted).

Hollon's counsel gave him ample opportunity to find substitute counsel. Similarly, the district judge gave Hollon the opportunity to state that he felt coerced. Roark's threat to withdraw does not fall outside of the range of competence demanded of attorneys in criminal cases. In fact, honesty with the client under such circumstances is essential. By warning Hollon that he would not be able to

---

**2.** At Hollon's change of plea hearing, Hollon and the district court judge engaged in the following colloquy:

> Q. Okay. Now, Mr. Roark can advise you. He can say, Here's what I think you should do, or, Here would be my advice. But it is not his decision to make. It's your decision to make. Do I have your pledge that this is in fact your decision and not Mr. Roark's?
> A. Yes.
> Q. Okay. Other than what has been stated in the courtroom today have any promises been made to you that are inducing you to plead guilty?
> A. No.
> . . . .

> Q. Have any threats or intimidations been made to you that are contributing to your decision to plead guilty?
> A. No
> . . . .
> Q. Okay.... Are you doing this of your own free will?
> A. Yes.
> Q. Do you think it's in your best interest?
> A. Yes.

**3.** Hollon stated at the evidentiary hearing that:

> I knew I could get a public defender; but I didn't like them. You know, I didn't have any confidence in them. I had hired an attorney; and I wanted him to represent me.

represent him if he decided to go to trial, Roark was merely alerting Hollon to the fact he was not the right person for the job and that if Hollon wanted someone "more sympathetic to trial," another attorney would need to be appointed. As such, we uphold the district court's finding that Hollon has not met the first prong of the test requiring that he show some deficiency in counsel's performance and, therefore, we need not address the second prong of the test, prejudice.

## C. Investigation of the Incident

 Hollon asserts that Roark did not fully and completely investigate the incident and its details. Specifically, Hollon asserts that Roark failed to impeach the testimony of Sgt. McDaniels at the preliminary hearing and failed to elicit and investigate testimony regarding the hole in Fender's bedroom wall, which resulted from Hollon discharging his shotgun over Fender and Thompson's heads. Hollon argues that if Roark had further investigated, Hollon would have had a much stronger case and would have been in a more advantageous position to proceed to trial.

The district court found that Hollon had not shown that counsel's conduct fell below the objective standard of reasonableness and specifically found that counsel had:

1) filed a discovery request with the prosecuting attorney's office; 2) interviewed Hollon as well as his brother, sister and brother-in-law; 3) spoke with Dr. Worst with regards to performing a psychiatric evaluation of Hollon; 4) reviewed photographs of the scene and also met with Mr. Lothspeich, prosecuting attorney, and reviewed Hollon's file; 5) explained the elements of the offenses to Hollon and discussed the statements Hollon made to the police; 6) talked with Hollon either by phone or in person on several occasions and maintained contact with him throughout the case.

In addressing whether counsel was deficient in not further investigating issues such as whether a hair had been found in the shotgun hole, the district court determined that such issues were strategic and should not be second-guessed on appeal.

In this case, Roark was not deficient when he limited his investigation, chose not to impeach Sgt. McDaniel and did not elicit testimony on the investigation of the hole in the bedroom wall. Hollon makes no suggestion as to what more counsel could have done to investigate the incident other than determine whether hair had been found in the shotgun hole. At the evidentiary hearing, Roark testified that:

A. There was an assertion made at some time ... that found within the crevice itself, the hole, was some human hair. And I believe someone opined, perhaps one of the detectives—it has been some time back—that it was human hair.

I don't believe that there was ever any lab analysis indicating that the strand in question was human hair or that it had genetic material that would make it possible to type it with the victim's hair.

Q. So you don't recall any testimony to that effect at the preliminary hearing?

A. I can't say that I don't. That was not an issue that concerned me at all.

It was conceded that a shotgun had been discharged; it had been discharged over the heads of the victims. It had created a significant hole in the wall against which the heads of the victims were resting. Whether there was human hair in that hole or not did not strike me of particular concern as regards the issues that were pending at the preliminary hearing.

 When the alleged error of counsel is a failure to investigate or discover potential exculpatory evidence, the determination of whether the error was prejudicial depends on whether the evidence would have led counsel to change his recommendation as to the plea. The assessment then turns on whether the evidence would have succeeded at trial. *Hill,* 474 U.S. at 59, 106 S.Ct. at 370. Roark stated that he did not take issue with various statements in the presentence report, such as how close the shotgun was to Fender's head because he:

felt that under these circumstances for us to be trying to tear the victim apart when it was quite clear that he [Hollon] had gone into the room, he had turned on the light, he had pointed a shotgun directly at

them, and he had discharged the shotgun was a very, very serious mistake.

The decision to not further investigate was based upon 1) the fact that all necessary investigation had been completed and 2) further investigation into issues such as whether there was hair in the shotgun hole was not necessary because, if used at trial, it would have been perceived as "tearing apart the victim." Thus, Roark's decision to not investigate was essentially a combination of acts within the wide range of reasonable professional assistance and one that falls within the category of strategic or tactical decisions that should not be second guessed. Hollon does not present any persuasive argument that the investigation was below an objective standard. Consequently, we uphold the district court's determination that Hollon has not established a claim of ineffective assistance of counsel in this regard.

**D. Suppression of Hollon's Confession**

██ Hollon argues that Roark rendered ineffective assistance of counsel because Roark failed to file a motion to suppress Hollon's confession. Hollon asserts that the confession would have been suppressed because, at the time of the confession, Hollon was mentally incompetent and was therefore unable to understand his *Miranda* warnings.

██ When considering whether an attorney's failure to file or pursue a motion to suppress constitutes incompetent performance, the Court is required to examine the probability of success of such a motion in order to determine whether counsel's decision against pressing the motion was within the wide range of permissible discretion and sound trial strategy. *Huck v. State*, 124 Idaho 155, 158, 857 P.2d 634, 637 (Ct.App. 1993). *See also Carter v. State*, 108 Idaho 788, 794–95, 702 P.2d 826, 832–33 (1985) (holding that counsel's failure to move to suppress the defendant's confession constituted ineffective assistance because it was obvious that the confession would have been suppressed); *State v. Wood*, 132 Idaho 88, 967 P.2d 702 (1998) (holding that where the record supported the district court's conclusion that statements would not have been suppressed and there had been nothing sub-

mitted on appeal to lead to a different conclusion, the petitioner had not shown any resulting prejudice from the failure to file a motion to suppress and therefore had not established a claim of ineffective assistance of counsel).

██ In this case, the district court determined that counsel's decision not to move for suppression was not unreasonable based on the facts of the case and because the suppression would not have changed the result of the case. Hollon's only basis for asserting that his confession would have been suppressed is that his lack of mental competency at the time of the confession made any waiver of *Miranda* rights involuntary. However, as the State correctly pointed out in its brief, the Supreme Court has held that while mental condition is relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry. *Colorado v. Connelly*, 479 U.S. 157, 165–66, 107 S.Ct. 515, 520–21, 93 L.Ed.2d 473 (1986). Additionally, absent police conduct causally related to the confession, there is no basis for concluding that any state actor has deprived a criminal defendant of due process of law. *Id.* at 164, 107 S.Ct. at 520; *State v. Whiteley*, 124 Idaho 261, 268, 858 P.2d 800, 807 (Ct.App.1993).

Because Hollon does not assert that any police coercion occurred and focuses only on his mental state to support his argument that counsel should have moved to suppress his confession, he has not shown that the confession would have been suppressed. Consequently, Hollon has not shown any resulting prejudice from the failure to file a motion to suppress. Moreover, Hollon's counsel testified that suppressing Hollon's confession would be useless because there were two eye witnesses that could testify to Hollon's actions. Thus, the decision by counsel not to seek suppression of the confession was in part a tactical decision that should not be second guessed on appeal. In sum, Hollon has not established the claim of ineffective assistance of counsel based on the motion to suppress and we therefore affirm the district court in this regard.

### E. Informing Hollon of Possible Defenses

 Hollon argues that counsel should have further investigated and discussed with Hollon the possibility of specific intent defenses.

Again, in order to succeed on an ineffective assistance of counsel claim, Hollon must show that counsel's performance was deficient and prejudicial. In this case, the record indicates that counsel explained to Hollon the concept of specific intent defenses and that Hollon insisted that he was perfectly sane. Roark told Hollon that if they could show he lacked the capacity to form any intent and had no control over what he was doing, they might have an argument to make to the district court. Roark stated at the evidentiary hearing that Hollon never asserted that he was suffering from any mental defect or incapacity. Additionally, the trial court found, and Hollon presents no evidence to dispute that, the psychological evaluations concluded that Hollon suffered from no mental illness.

Based on Roark's discussions with Hollon and the psychological evaluations, Roark's decision not to pursue specific intent defenses was within the wide range of acceptable professional assistance. Roark had sufficient information to evaluate whether a jury would have found Hollon capable of the intent necessary for the various crimes and made a competent decision not to pursue such defenses. Because counsel's performance was not deficient, we need not address whether it was prejudicial and we affirm the district court's ruling.

### III.

### HOLLON CANNOT CHALLENGE WHETHER THE DISTRICT COURT PROPERLY APPLIED THE FACTORS OF I.C. § 19–2523 IN A POST–CONVICTION PROCEEDING.

 Hollon argues that a post-conviction relief proceeding is the proper place to review whether the sentencing court properly applied the factors of I.C. § 19–2523 because, under I.C. § 19–2523, if mental condition is a significant factor, the district court is required to apply the factors. Therefore, Hollon argues, because applying the factors is mandatory, not doing so renders the sentence illegal and the sentence is thus in violation of the laws of Idaho. *See* I.C. § 19–4901(a)(1). Hollon also asserts that because the factors were not applied, there "exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." *See* I.C. § 19–4901(a)(4). The State argues that whether the district court properly applied the factors of I.C. § 19–2523 is an issue which could have been raised on direct appeal and is therefore not subject to attack through an application for post conviction relief.

 An application for post-conviction relief is designed to permit a challenge to an underlying conviction or to an illegal sentence. *State v. Heyrend,* 129 Idaho 568, 570, 929 P.2d 744, 746 (Ct.App.1996) (citing *Brandt v. State,* 118 Idaho 350, 796 P.2d 1023 (1990)). A judge's exercise of discretion in choosing a sentence within the lawful limits is not subject to attack by application for post-conviction relief. *Olds v. State,* 122 Idaho 976, 979, 842 P.2d 312, 315 (Ct.App.1992). The appropriate means for challenging the reasonableness of a sentence imposed by the trial court is a direct appeal. *Evans v. State,* 127 Idaho 662, 664, 904 P.2d 574, 576 (Ct. App.1995). Idaho Code § 19–4901(b) provides that the Uniform Post–Conviction Procedure Act is

> not a substitute for nor does it affect any remedy incident to the proceedings in the trial court, or of an appeal from the sentence or conviction. Any issue which could have been raised on direct appeal, but was not, is forfeited and may not be considered in post conviction proceedings, unless it appears to the court, on the basis of a substantial factual showing by affidavit, deposition or otherwise, that the asserted basis for relief raises a substantial doubt about the reliability of the finding of guilt and could not, in the exercise of due diligence, have been presented earlier.

In this case, Hollon's claim is that a failure to apply the factors of I.C. § 19–2523 ren-

dered the sentence illegal. Hollon correctly states that if mental condition is a significant factor, the court must consider the factors listed in I.C. § 19–2523. Idaho Code § 19–2523 uses mandatory language of "shall" and we have previously stated that I.C. § 19–2523 requires the trial court to consider the defendant's mental illness as a sentencing factor. *State v. Odiaga*, 125 Idaho 384, 391, 871 P.2d 801, 808 (1994). Ultimately, however, Hollon's claim that the district court failed to apply the factors of I.C. § 19–2523 is an assertion that his sentence was excessive in light of his mental condition, an issue that could have been raised on direct appeal and thus cannot be heard through a post-conviction relief proceeding.

Hollon also asserts that his claim can be brought under I.C. § 19–4901(a)(4) (the existence of material facts not previously presented or heard) because the district court did not consider the factors of I.C. § 19–2523. The district court noted that at sentencing the court had read and considered various psychological reports, including the presentence investigation report. Hollon's assertion essentially boils down to an argument that considering the factors of I.C. § 19–2523 is alone sufficient to create "material facts not previously presented or heard." However, the factors included in I.C. § 19–2523 do not by themselves present new information, but rather a manner in which to evaluate information that the court already has before it. Hollon does not assert that there are more reports in existence which would bring to light new information or provide a more insightful assessment of Hollon's mental condition. Hollon attempts to stretch the language of I.C. § 19–4901(a)(4) to include as new material the factors of I.C. § 19–2523. However, a plain reading of the statute does not support his assertion. The language of the statute clearly contemplates new information, not a new way in which to evaluate information.

In sum, we affirm the district court's denial of Hollon's petition for post-conviction relief on the issue of whether the district court properly considered the mental condition factors of I.C. § 19–2523.

## IV.

### CONCLUSION

Because Hollon's defense counsel provided Hollon with effective assistance on each of Hollon's counts, we affirm the district court's denial of Hollon's post-conviction relief petition as to his claim of ineffective assistance. Additionally, we affirm the district court's denial of Hollon's petition on the issue of whether the district court properly considered I.C. § 19–2523 at sentencing as the issue is one that should have been brought on direct appeal.

Justices SILAK, SCHROEDER, WALTERS and Justice Pro Tem JOHNSON, concur.