982 P.2d 931

**Donald P. RAY, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 24092.

Supreme Court of Idaho, Boise, January 1999 Term.

June 21, 1999.

Rehearing Denied Aug. 24, 1999.

Kehne Law Office, Boise, for appellant. Rolf M. Kehne argued.

Hon. Alan G. Lance, Attorney General; Kenneth M. Robins, Deputy Attorney General, Boise, for respondent. Kenneth M. Robins argued.

TROUT, Chief Justice.

This is an appeal from the district court's order denying the appellant, Donald P. Ray's (Ray) claims for post-conviction relief following an evidentiary hearing.

## I.

## BACKGROUND

In 1994, Ray was living with his sister, D.U. and the victim, D.U.'s prepubescent daughter. Sometime during that year, D.U. discovered a videotape, recorded by Ray, which depicted the victim sleeping on the couch and zoomed in on the victim's crotch area. Ray also hid the video camera in the bathroom in an attempt to videotape the victim using the bathroom. D.U. informed the victim's counselor, child protection services and the police about the video tape.

D.U., following instructions from Detective Ken Smith (Smith), told Ray that he should contact Smith and warned him that if he "jerked Smith around" he would end up in jail. Ray made an appointment to meet with Smith and drove himself to the police station for the appointment. At the police station, Ray checked in with the front desk and Smith escorted Ray to an interrogation room. Ray asked Smith if he was going to be charged with a crime and informed Smith that if he was to be charged, he wanted an attorney. Smith informed Ray that an attorney did not need to be involved at that time. Smith then left the room, locking the door. Ray later discovered that the door was locked when he attempted to leave the room.

After approximately thirty minutes, Smith returned and began questioning Ray, although at no time did Smith advise Ray of his *Miranda* rights. While being taped, Ray confessed that he had made the tapes and that he was sexually aroused by the tapes. Approximately one month later, Ray was charged with sexual abuse of a minor under the age of sixteen. Ray pled guilty to the charge and was sentenced to ten years, consisting of three years fixed followed by seven years indeterminate. As part of Ray's plea agreement, the prosecutor agreed not to pursue various theft cases. Ray was not informed that as a result of his guilty plea he would be required to register as a sex offender until his sentencing hearing.

Ray subsequently filed a petition for post-conviction relief with the district court asserting, along with claims not at issue in this appeal, that his defense counsel was ineffective because he did not move to suppress Ray's confession and because he did not inform Ray of the sex offender registration requirement prior to entry of his guilty plea. Ray also claimed that his guilty plea was invalid because he was not informed by the district judge that he would be required to register as a sex offender prior to entry of his plea. After an evidentiary hearing on the issues, the district judge denied Ray's petition.

Specifically, the district judge found at the evidentiary hearing that (1) Ray knowingly, competently and intelligently entered his guilty plea; (2) that whether Ray's confession would have been suppressed was doubtful; (3) that Ray would have been convicted by a jury even if the confession had been suppressed; (4) that Smith, had he testified, would have been a credible witness; (5) that counsel adequately and competently represented Ray with regard to the motion to suppress; and (6) that Ray had not been informed of the sex offender registration requirement prior to sentencing. The district judge held in a later order that sex offender registration was a collateral consequence of pleading guilty and thus, the court was not required to disclose the registration requirement to Ray prior to entry of his plea. The district judge also held that counsel's failure to inform Ray of the sex offender registration requirement was not ineffective assistance of counsel.

## II.

## DISCUSSION

### A. Standard of Review.

A petitioner for post-conviction relief has the burden of proving the allegations upon which his claim is based by a preponderance of the evidence. I.C.R. 57(c); *McCoy v. State*, 129 Idaho 70, 72–73, 921 P.2d 1194, 1196–97 (1996). The district judge's findings of fact in a post-conviction proceeding will not be disturbed on appeal unless clearly erroneous. *McCoy*, 129 Idaho at 73, 921 P.2d at 1197. A denial of post-conviction relief will not be disturbed on appeal where there is substantial and compe-

tent evidence supporting the denial. *Id.;* *State v. Pizzuto,* 119 Idaho 742, 778, 810 P.2d 680, 716 (1991).

### B. Ray's guilty plea was not rendered involuntary by the court's failure to inform him, prior to entry of his plea, that he would be required to register as a sex offender.

Ray contends that the sex offender requirement is a direct consequence of his guilty plea and thus, the district judge, by failing to notify him of the requirement, violated Idaho Criminal Rule (I.C.R.) 11(c) and his guilty plea is thus invalid. The State, however, urges this Court to follow the majority of states and determine that registration is a collateral consequence of pleading guilty and the failure to inform Ray does not invalidate his plea. We agree with the State and accordingly hold that sex offender registration is a collateral consequence of a guilty plea. Therefore, the district judge's failure to inform Ray prior to entry of his plea that he would ·be required to register as a sex offender does not invalidate his plea.

A criminal defendant by pleading guilty waives certain constitutional rights, including the privilege against self-incrimination, the right to a jury trial and the right of confrontation. *State v. Carrasco,* 117 Idaho 295, 297, 787 P.2d 281, 283 (1990). Waiver of these constitutional rights will be upheld if the entire record demonstrates the waiver was made voluntarily, knowingly and intelligently. *Id.* at 298, 787 P.2d at 284. Whether a guilty plea is voluntary and understood entails a three-part inquiry, one prong of which is whether the defendant understood the consequences of pleading guilty. *State v. Colyer,* 98 Idaho 32, 34, 557 P.2d 626, 628 (1976). The plea must be entered with "a full understanding of what the plea connotes and of its consequences." *State v. Mauro,* 121 Idaho 178, 180, 824 P.2d 109, 111 (1991) (quoting *Boykin v. Alabama,* 395 U.S. 238, 244, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274, 280 (1969)).

In Idaho, the trial court must follow the minimum requirements of I.C.R. 11(c) in accepting guilty pleas. *Mauro,* 121 Idaho at 180, 824 P.2d at 111 (quoting *State*

*v. Detweiler,* 115 Idaho 443, 446, 767 P.2d 286, 289 (Ct.App.1989)). If the record indicates that the trial court followed the requirements of I.C.R. 11(c), this is a prima facie showing that the plea is voluntary and knowing. *Id.* One of the requirements of I.C.R. 11(c) is showing that "[t]he defendant was informed of the consequences of the plea, including minimum and maximum punishments, and other direct consequences which may apply." I.C.R. 11(c)(2). At a minimum, a defendant must understand the possible maximum penalty which would be imposed as a consequence of his plea. *Colyer,* 98 Idaho at 36, 557 P.2d at 630. However, determining what constitutes a "direct" as opposed to a "collateral" consequence of a guilty plea is a more difficult matter.

In *Carter v. State,* 116 Idaho 468, 776 P.2d 830 (Ct.App.1989), the Idaho Court of Appeals addressed whether the future possibility of persistent violator status was a collateral, rather than direct, consequence of a guilty plea. The court held that the consequence was collateral, focusing on the fact that the defendant would only be subject to the persistent violator statute if he committed another felony. Thus, the potential consequence was entirely within the defendant's power to prevent. *Id.* at 468–69, 776 P.2d at 830–31. Similarly, in *Brooks v. State,* the Idaho Court of Appeals held that the trial court was not required to inform the defendant of parole eligibility requirements when accepting his plea. *Brooks,* 108 Idaho 855, 857–58, 702 P.2d 893, 895–96 (Ct.App.1985).

A number of jurisdictions have addressed the question Ray presents in this appeal; whether sex offender registration is a direct or collateral consequence of a guilty plea. *State v. Ward,* a Washington case, stands for the majority view that sex offender registration is a collateral consequence of a guilty plea and thus, the court's failure to notify a defendant of the requirement does not invalidate a guilty plea. *State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062, 1075–76 (1994). The majority of jurisdictions reason that requiring a sexual offender to register is largely remedial in purpose, not punitive, and is intended to facilitate law enforcement and

protect children.[1] In contrast, California, in *In re Birch* held that sex offender registration was a "grave and direct consequence of [a] guilty plea." *In re Birch*, 10 Cal.3d 314, 110 Cal.Rptr. 212, 515 P.2d 12, 17 (1973).

In *Ward*, the Washington Supreme Court had before it not only the issue of whether registration was a direct or collateral consequence of pleading guilty, but also whether registration violates the *ex post facto* clause. *Ex post facto* analysis requires a determination of whether the registration requirement further punishes the offender or whether it serves a predominately regulatory purpose. *Ward*, 869 P.2d at 1072–74. In holding that sex offender registration was a collateral consequence of a guilty plea, the *Ward* court focussed on the fact that, "[a]lthough the duty to register flows from [the defendant's] conviction for a felony sex offense, it does not enhance [the defendant's] sentence or punishment." *Id.* at 1076. The court referred to its analysis under the *ex post facto* clause to state that registration as a sex offender does not alter the standard of punishment. *Id.*

In discussing whether sex offender registration constitutes punishment, the *Ward* court determined that although a registrant may be deterred by registering, the registrant would also be deterred from the fact of conviction and punishment served whether or not he was required to register. *Id.* at 1073. The court also noted that the primary intent of the law was to aid law enforcement agencies' efforts to protect communities "by pro-

viding a mechanism for increased access to relevant and necessary information." *Id.* at 1073. Finally, the court determined that registration was not excessive in relation to its non-punitive purpose and declined to accept arguments that the registration statute would burden former offenders by making them the focus of every sex crime investigation and that the registration amounted to a lifelong "badge of infamy." *Id*; *but see Birch*, 110 Cal.Rptr. 212, 515 P.2d at 17. The court stated that attention given to a registrant in subsequent sex crime investigations was incident of the conviction, not registration. *Ward*, 869 P.2d at 1073. The court also noted the fact that every offender, under Washington's statute, could petition to be relieved of the duty to register. *Id.* at 1073–74.

▪▪▪ We find the Washington Supreme Court's reasoning in *Ward* to be persuasive and hold that sex offender registration is not a direct consequence of a guilty plea. The purpose of Idaho's registration statute is not punitive, but remedial. The legislature specifically found that:

> sex offenders present a significant risk of reoffense and that efforts of law enforcement agencies to protect their communities, conduct investigations and quickly apprehend offenders who commit sexual offenses are impaired by the lack of current information available about individuals who have been convicted of sexual offenses who live within their jurisdiction.... [T]his state's policy is to

---

1. Other states that, like Washington, hold sex offender registration is a collateral, not direct result of pleading guilty are *State v. Young*, 112 Ariz. 361, 542 P.2d 20, 22 (1975) (holding that trial judge committed no error in not advising defendant of statute requiring sex offender registration because defendant need not be informed of collateral effects of conviction); *People v. Taylor*, 203 Ill.App.3d 636, 149 Ill.Dec. 115, 561 N.E.2d 393, 393–94 (1990) (noting in facts that defendant contended that guilty plea was involuntary because he was not notified that conviction made him subject to requirements of the state's sex offender registration act. The court held that the act was not penal in nature, but did not directly address defendant's claim.); *Opinion of Justices*, 423 Mass. 1201, 668 N.E.2d 738, 755 (1996) (stating that Justices would not determine it constitutionally required to inform a defendant that his guilty plea might subject him to commu-

nity notification provisions of proposed sex offender legislation); *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367, 406 n. 18 (1995) (holding that registration and notification law was not punitive and thus was a collateral consequence of defendant's guilty plea, thus, plea agreement was not violated); *Matter of B.G.M.*, 929 S.W.2d 604, 606–607 (Tex.App.1996) (holding Sexual Offender Registration Program to be remedial rather than punitive and the consequences of registration to be collateral rather than direct); *Johnson v. State*, 922 P.2d 1384, 1387 (Wyo.1996) (holding that the court is under no duty to advise a defendant about the registration requirement because the statute was regulatory rather than part of the penalty or punishment). *See also* Licia A. Esposito, J.D., Annotation, *State Statutes or Ordinances Requiring Persons Previously Convicted of Crime to Register with Authorities*, 36 A.L.R.5th 161, § 9(a)—(b) (1996).

assist efforts of local law enforcement agencies to protect communities by requiring sexual offenders to register with local law enforcement agencies and to make certain information about sexual offenders available to the public as provided in this chapter.

I.C. § 18–8302 (Supp.1998). As the Washington Supreme Court noted, although persons required to register as sex offenders may subsequently be the focus of suspicion and investigation, the sex offender will still be afforded all due process and constitutional protections all citizens enjoy. *Ward*, 869 P.2d at 1073. Additionally, the attention given will not so much be the result of registration as of the conviction which led to registration. *Id.* Another factor lessening the punitive aspect of the requirement is that the registrant can petition to be released from the requirements after ten years. I.C. § 18–8310 (Supp.1998); *but cf. Birch*, 110 Cal. Rptr. 212, 515 P.2d at 16.

Moreover, we note that as a part of our analysis we take into account the fact that sex offender registration is a consequence of conviction over which the district judge has no direct control. Rather, like losing the right to vote, to carry firearms and to be bonded, sex offender registration is something that indirectly results from the fact of having a felony or sexual abuse conviction on one's record. As such, the indirect nature of registration takes it out of the direct consequences aspect of I.C.R. 11(c).

In sum, Idaho's Sexual Offender Registration Act provides an essential regulatory purpose that assists law enforcement and parents in protecting children and communities. Indeed, the fact that registration brings notoriety to a person convicted of a sexual offense does prolong the stigma attached to such convictions. However, the fact of registration is not an additional punishment; it does not extend a sentence. Rather, registration provides an information system that assists in the protection of communities. In holding that sex offender registration is a collateral, not direct, consequence of pleading guilty, we affirm the district judge's denial of Ray's post-conviction petition in this regard.

**C.  Ray received effective assistance of counsel as to both of his claims.**

On an appeal from an ineffective assistance of counsel claim, the appellate court reviews the district judge's factual findings to determine whether they were clearly erroneous. *State v. Wood*, 132 Idaho 88, 96, 967 P.2d 702, 710 (1998), *cert. denied*, ——— U.S. ———, 119 S.Ct. 1768, 143 L.Ed.2d 798 (1999). The reviewing court, however, exercises free and independent review of the district judge's application of law. *Id.*

To demonstrate ineffective assistance of counsel, Ray must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To demonstrate that counsel's performance was deficient, Ray must show that his counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203, 208 (1985). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. In order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59, 106 S.Ct. at 370, 88 L.Ed.2d at 210. The burden is on the defendant to prove a claim of ineffective assistance of counsel. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177.

Lastly, when evaluating an ineffective assistance of counsel claim, strategic and tactical choices should not be second-guessed. *Id.* It is presumed that counsel is competent and that trial tactics were based on sound legal strategy. *Id.*

**1.  Failure to inform Ray of sex offender registration requirement.**

As well as arguing that the district judge's failure to inform him of the sex offender

registration rendered his plea involuntary, Ray also contends that his counsel's failure to notify him of the sex offender registration requirement constituted ineffective assistance of counsel.

■ The Sixth Amendment contains no implied duty for an attorney to inform his client of collateral consequences of a guilty plea. *Carter v. State,* 116 Idaho 468, 469, 776 P.2d 830, 831 (Ct.App.1989); *see also* Jones v. State, 118 Idaho 842, 844, 801 P.2d 49, 51 (Ct.App.1990) (holding that failure to inform defendant of the effect an escape conviction would have on a plea agreement was a collateral consequence and did not rise to the constitutional threshold of ineffective assistance of counsel); *Retamoza v. State,* 125 Idaho 792, 796–97, 874 P.2d 603, 607–08 (Ct.App.1994) (holding that counsel's failure to advise a client about the opportunity to request a judicial recommendation against deportation is a matter collateral to the criminal proceeding, to which the Sixth Amendment right to effective assistance of counsel does not extend). Because we hold that sex offender registration is a collateral consequence of a guilty plea, counsel did not render ineffective assistance in not informing Ray, prior to entry of his plea, that he would be required to register as a sex offender. Accordingly, we affirm the district judge's denial of Ray's petition in this regard.

### 2. Failure to move to suppress Ray's confession.

Ray also asserts that counsel's failure to move to suppress his confession constitutes ineffective assistance of counsel. The district judge held that whether Ray's confession would have been suppressed was questionable and determined that although Ray was a credible witness, Detective Smith would have been credible as well. (Smith did not testify at the evidentiary hearing.) Last, the district judge held that counsel's decision not to move to suppress the confession was strategic and should not be second-guessed. Specifically, the district judge noted there were valid reasons for the plea agreement besides the existence of a confession, namely the theft charges pending against Ray, which

were dismissed in exchange for his guilty plea.

■ When considering whether an attorney's failure to file or pursue a motion to suppress constitutes incompetent performance, the Court is required to examine the probability of success of such a motion in order to determine whether counsel's decision against pressing the motion was within the wide range of permissible discretion and sound trial strategy. *Hollon v. State,* 132 Idaho 573, 578, 976 P.2d 927, 932 (1999).

■ In this case, Ray testified that on the day he confessed, he had driven himself to the police station for his meeting with Detective Smith. Smith met him at the front desk and led him back to an interrogation room where Smith left Ray for approximately thirty minutes. Ray began to wonder what was going on and attempted to open the door, only then discovering that the door was locked. Ray stated at the evidentiary hearing that at that time, he intended to terminate the interview. When Smith came back to the room he questioned Ray. Ray testified that he did not feel free to leave and did not feel free not to answer Smith's questions. At the end of the interview, Smith told Ray he was free to leave. Ray was arrested approximately one month later.

Here, the district judge correctly determined that whether the confession would have been suppressed was questionable. For instance, in *State v. Birkla,* the Idaho Court of Appeals affirmed the denial of a motion to suppress where an officer asked the suspect to accompany him to the police station to answer questions and then placed the suspect in a room, which the suspect thought was locked. As the Idaho Court of Appeals stated, the fact that questioning takes place in a police station does not necessarily mean that a party is in custody. *State v. Birkla,* 126 Idaho 498, 501–502, 887 P.2d 43, 46–47 (Ct. App.1994). Similarly, in *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977) the United States Supreme Court found that a voluntary appearance at the police station, followed by questions, did not amount to a deprivation of freedom of action in a significant way. Recently, this Court held in *State v. Loosli,* 130

Idaho 398, 941 P.2d 1299 (1997) that the trial court correctly denied a motion to suppress a confession where the police had left several messages for the defendant in an attempt to contact and question him and the police picked the defendant up and took him to the police station. *Id.* at 398, 941 P.2d at 1299. The defendant was questioned in a small room, two officers were present during the questioning and the police informed Loosli that their opinion was that a prosecution would be successful. *Id.* at 398–99, 941 P.2d at 1299–1300. Last, the officers had indicated to the defendant that if he did not tell the truth, it would be necessary for them to call the defendant's daughters and tell them their "dad was calling them a liar." *Id.* at 399, 941 P.2d at 1300.

We also note that the fact the interview room was locked does not compel a conclusion that the confession would have been suppressed. It is not unreasonable that inside a police station, for the safety and security of those who work at the station and of those, like Ray, who are visitors to a station, doors would be locked and that in order to exit the station, assistance would be necessary. Additionally, there is nothing in the record to indicate that, had Ray asked, Smith would not have escorted him out of the station once he returned to the interrogation room. *See People v. Stansbury,* 9 Cal.4th 824, 38 Cal.Rptr.2d 394, 889 P.2d 588, 593–94 (1995).

Although ineffective assistance of counsel is a two prong analysis requiring deficient performance and prejudice to the defendant, we need not reach the second prong because of our determination that counsel's decision not to move to suppress was not deficient. As we outlined above, the success of the motion was questionable. Additionally, the existence of the confession was a factor in offering Ray the plea bargain in exchange for dropping the pending theft cases. The fact that counsel, in light of the other pending charges, did not pursue a questionable motion to suppress is certainly "within the range of competence demanded of attorneys in criminal cases."

In sum, counsel's decision not to file a motion to suppress Ray's confession was based on a valid assessment that the confession would not likely have been suppressed, was a sound strategic decision considering the other claims pending against Ray and Ray suffered no prejudice resulting from counsel's decision. As such, we affirm the district judge's denial of Ray's petition for post-conviction relief.

## III.

## CONCLUSION

We hold that sex offender registration is a collateral consequence of a guilty plea. Accordingly, we affirm the district judge's order denying Ray's post-conviction relief petition on the claim that his guilty plea was involuntary and on Ray's ineffective assistance of counsel claims.

Justice WALTERS concurs.

Justice SILAK concurs and concurs in the result of Part II.(C)(2).

Justice KIDWELL, Dissenting in Part II.(B) and concurring in Part II.(C).

I respectfully dissent from the majority's determination that Idaho's sex offender registration requirement is a collateral consequence of a defendant's guilty plea. Idaho Criminal Rule 11(c)(2) requires that a trial court must, before accepting a guilty plea, inform the defendant of the direct consequences of the guilty plea. Idaho's extensive and punitive sex offender registration requirement is, in my analysis, a direct consequence; thus, the district court erred in not notifying the defendant of the sex offense registration requirement. The statute imposes additional punishment upon a person pleading guilty to a wide array of sexual offenses. This is a legitimate punitive measure imposed by the legislature, but defendants negotiating pleas should be aware of the punishment they are about to receive.

In Idaho, the registration requirement is "definite, immediate and largely automatic," the factors that, as our neighbor state of Washington pointed out, distinguish direct consequences of a plea from collateral consequences. *State v. Ward,* 123 Wash.2d 488,

869 P.2d 1062, 1075 (1994). The Idaho statute's combination of an annual lifetime registration requirement along with its broad notification provisions amounts to a form of punishment. In determining that registration is not punitive, the majority relies upon case law from states where registration requirements are far less onerous and notification provisions are extremely narrow.

The Sexual Offender Registration Notification and Community Right-to-Know Act, I.C. §§ 18–8301 to –8326, applies to *all* persons convicted of specified felony sex crimes after July 1, 1993, even if judgment is withheld. I.C. § 18–8304(1), (3). The statute applies to those convicted of nonviolent, consensual adult behavior (crime against nature, I.C. § 18–6605, and incest, I.C. § 18–6602) as well as to those found guilty of sex crimes involving forcible acts or minor children. I.C. § 18–8304(1)(a). Unlike the *future possibility* of persistent violator status addressed in *Carter v. State*, 116 Idaho 468, 468–69, 776 P.2d 830, 830–31 (Ct.App.1989), the registration and notification provisions of the statute are *automatic* upon the district court's acceptance of a defendant's guilty plea. I.C. § 18–8304(1), (3). Moreover, registration is an additional requirement over and above the sentence served, unlike the restricted parole eligibility challenged in *Brooks v. State*, 108 Idaho 855, 702 P.2d 893 (Ct.App.1985), which merely changed the proportion of the defendant's sentence that was required to be spent in confinement.

Unlike some other states, Idaho's statute imposes a *continuing* obligation to register. In addition to registering with local law enforcement upon release from confinement and when moving to a new residence, registrants must re-register every year. I.C. §§ 18–8306(3), –8307(1), –8309. At each registration, they must provide updated personal information, fingerprints, and a photograph. I.C. § 18–8307(4). They must also pay a fee every time they re-register. *Id.* Any registrant who fails to register or send required notices to local law enforcement is subject to a $5000 fine and up to five years' imprisonment. I.C. § 18–8311.

In addition to requiring a registrant to register every year, Idaho's Act imposes a *lifelong* registration requirement. I.C. § 18–8310(1). *Compare State v. Ward*, 869 P.2d at 1073–74 (duty to register ends for most Washington registrants ten or fifteen years after the date of release from confinement). Even after the registrant meets the exacting requirements mandated by the statute, the decision to exempt a person from further registration after ten years is discretionary with the district court. I.C. § 18–8310(1). Judges in many instances may be reluctant to exempt offenders because of public attitudes or pressures. The practical effect of this discretionary standard will be that the registration requirement will be lifelong for many, perhaps most, registrants.

Furthermore, even if the person is judicially exempted from further annual registration, it is still within the district court's discretion whether to order that information regarding the registrant be expunged from the Idaho Department of Law Enforcement's central registry. I.C. §§ 18–8305(2), – 8310(2). It should be noted that no mechanism is provided for expunging the information in federal or local law enforcement records. *See id.*

Idaho's statute appears to have been drafted to indicate that a form of punishment was intended. *Any* person may obtain information about named individuals, (including addresses, birth dates, and photographs), or a list of registered offenders by geographical area. I.C. § 18–8323(2)(a), (b), (e), (3). Schools and organizations may obtain statewide lists of registrants. I.C. § 18–8323(2)(c). Statewide lists of registrants are released quarterly to the Department of Health and Welfare and the Superintendent of Public Instruction. I.C. § 18–8324(2). In addition, a list of registrants who are delinquent in re-registering is released quarterly to the public. I.C. § 18–8324(3). Any person or entity receiving registry information may distribute it further. I.C. §§ 18–8323(7), –8324(6). *Compare State v. Ward*, 869 P.2d at 1070 (under Washington's statute, registrant information remains confidential with state agencies unless there is evidence that the registrant poses a threat to the community); *State v. Noble*, 171 Ariz. 171, 829 P.2d 1217, 1222–24 (1992) (holding

that Arizona's registration statute was not punitive where only government licensing agencies, and employers and social service agencies in certain sensitive areas, had access to registrant information); *People v. Adams*, 144 Ill.2d 381, 163 Ill.Dec. 483, 581 N.E.2d 637, 641 (1991) (holding that Illinois statute was not punitive where statute provided criminal penalties for law enforcement personnel who conveyed registration information to the public).

Because of the definite, immediate, and automatic requirements of Idaho's sex offender registration statute, judges should be mandated to notify a defendant of these direct consequences when the defendant voluntarily enters a guilty plea to an enumerated sex offense.

Justice SCHROEDER concurs.