941 P.2d 330

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Bobby Gene McFARLAND, Defendant–Appellant.**

No. 22700.

Court of Appeals of Idaho.

May 19, 1997.

Marty M. Raap, Wallace, for defendant-appellant.

Hon. Alan G. Lance, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for plaintiff-respondent.

PERRY, Judge.

Bobby Gene McFarland appeals from his judgments of conviction for one count of second degree murder, I.C. §§ 18–4001, – 4003(g), and two counts of robbery, I.C. § 18–6501. McFarland asserts as error the district court's denial of his motion to withdraw his *Alford* pleas.[1] He also claims the district court erred in sentencing him. We affirm.

## I.

### BACKGROUND

The facts concerning McFarland's convictions are as follows:

Sometime after midnight on January 10, 1992, Harold Bart was brutally beaten, robbed, and then stabbed to death near the Kellogg Lumber Company, in Shoshone County, Idaho. On January 18, McFarland and his codefendant, Dan Graff, were arrested by police for robbing Julia Arnold as she was leaving the Yokes Pac 'N Save. The execution of a search warrant issued in conjunction with that offense turned up evidence incriminating Graff in the Bart murder. Graff admitted he was involved in the murder, and also made statements against McFarland. According to Graff, he and McFarland struck up a conversation with Mr. Bart while walking home from the grocery store. The three men engaged in brief and evidently cordial conversation, after which McFarland and Graff walked away. McFarland and Graff then decided to rob Mr. Bart. Acting in concert, they attacked Mr. Bart, beating and kicking him into unconsciousness. Graff claimed that McFarland then removed a bonehandled knife Mr. Bart was wearing from its sheath, and repeatedly stabbed Mr. Bart in the chest. McFarland and Graff then removed from Mr. Bart his leather vest, wallet, watch and two one-dollar bills. McFarland wiped the knife clean and hid it under some nearby crates, and the two men then fled the scene.

McFarland denied Graff's allegations, claiming to have no recollection of the events the night Mr. Bart was murdered, although he acknowledged he had woken later that morning in possession of Mr. Bart's bloodied vest. Based on this evidence, McFarland was charged with the first degree murder and robbery of Mr. Bart, and the subsequent robbery of Ms. Arnold. In February of 1992, McFarland, through counsel, requested that the court order a psychological evaluation. The court evidently denied the motion.[2] Still maintaining he could not remember what had happened the night Mr. Bart was killed, McFarland entered *Alford* pleas to a reduced charge of second degree murder and to both of the robbery charges. The court accepted McFarland's pleas and ordered a presentence investigation report. McFarland filed another motion requesting the court to order a psychological evaluation before sentencing. The motion was denied....

... On December 31, the district court sentenced McFarland to an aggregate term of life, with ten years' fixed, for the murder and robbery of Mr. Bart, and ordered McFarland to serve a seven-year sentence, with one-year fixed, for the robbery of Ms. Arnold. The court further

1. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

2. [The district court's denial of McFarland's pre-plea motion for a psychological report was not raised as an issue in his first direct appeal.]

ordered that the sentences be served concurrently.

*State v. McFarland,* 125 Idaho 876, 877–78, 876 P.2d 158, 159–60 (Ct.App.1994) (footnotes omitted).

McFarland appealed the convictions, claiming the district court erred in denying his post-plea, presentence motion for a psychological evaluation. This Court held that the district court did err in this regard and reversed the district court's denial of McFarland's motion. *Id.,* at 881, 876 P.2d at 63. McFarland's sentences were vacated and the case was remanded for resentencing.

On remand, the district court granted McFarland's motion for a psychological evaluation. Subsequently, an evaluation of McFarland was conducted by Dr. Domitor, a clinical psychologist. McFarland moved to withdraw his *Alford* pleas, claiming that in light of the information provided by the evaluation, the record was insufficiently clear as to whether his pleas were entered knowingly, intelligently and voluntarily. The district court denied McFarland's motion, finding that there were no grounds justifying withdrawal of his pleas. The district court resentenced McFarland to the same sentences as originally imposed. McFarland appealed.

## II.

### DISCUSSION

#### A. Proper Legal Standard

First, we find it necessary to address the legal standard the district court applied in exercising its discretion to deny McFarland's motion to withdraw his *Alford* pleas. Although the parties argued this point at the hearing below, the district court, in its memorandum opinion and order, did not articulate the discretionary standard it applied. Determination of the proper discretionary standard is a question of law, over which we exercise free review. *State v. O'Neill,* 118 Idaho 244, 245, 796 P.2d 121, 122 (1990).

The decision to grant a motion to withdraw a guilty plea lies in the discretion of the district court. *State v. Freeman,* 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct.App.1986).

Appellate review of the denial of a motion to withdraw a plea is limited to whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *Id.* The exercise of this discretion is affected by the timing of the motion to withdraw the plea. *State v. Ballard,* 114 Idaho 799, 801, 761 P.2d 1151, 1153 (1988). As indicated by I.C.R. 33(c), a motion to withdraw a plea made after sentencing may be granted only to correct a manifest injustice. *Id.* The stricter standard is justified to insure that an accused is not "encouraged to plead guilty to test the weight of potential punishment and withdraw the plea if the sentence were unexpectedly severe." *Freeman,* 110 Idaho at 121, 714 P.2d at 90, *quoting Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir.1963). A less rigorous standard applies to a motion made before sentencing, requiring that the defendant present a just reason for withdrawing the plea. *Ballard,* 114 Idaho at 801, 761 P.2d at 1153. In either situation, the defendant has the burden of proving that the plea should be withdrawn. *Griffith v. State,* 121 Idaho 371, 374–75, 825 P.2d 94, 97–98 (Ct.App.1992).

McFarland claims that because the original sentences were vacated, the case was essentially "back to square one" in terms of sentencing, and the less rigorous standard should have been used. The state asserts that, given the unique circumstances of this case, the stricter standard should have been applied by the district court in exercising its discretion.

Generally, where a judgment has been vacated, it is a nullity and the effect is as if it had never been rendered at all. *State v. Barwick,* 94 Idaho 139, 143, 483 P.2d 670, 674 (1971). Thus, this Court's opinion, reversing the district court's decision denying McFarland a psychological evaluation and vacating McFarland's sentences, nullified those sentencing proceedings. Consequently, on remand, McFarland's case proceeded as if the original sentences had never been entered. Therefore, under I.C.R. 33(c), because sentence had not been imposed, the district court should have utilized the less rigorous standard of just reason in determin-

ing whether to grant McFarland's request to withdraw his *Alford* pleas. Although McFarland, on remand, may have benefitted from knowing what the ultimate sentence would have been, our holding places McFarland in the same posture had the district court not erred in denying his motion for a psychological evaluation.

## B. Just Reason

■ McFarland asserts that the district court abused its discretion in denying his motion to withdraw his guilty pleas. When a district court's discretionary decision in a criminal case is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

■ Withdrawal of a guilty plea before sentence is imposed is not an automatic right, and the defendant has the burden of proving that the plea should be allowed to be withdrawn. *State v. Dopp,* 124 Idaho 481, 485, 861 P.2d 51, 55 (1993). A defendant seeking to withdraw a guilty plea before sentencing must first show a just reason for withdrawing the plea. *Id.* Once the defendant has met this burden, the state may avoid a withdrawal of the plea by demonstrating the existence of prejudice to the state. *Id.; State v. Henderson,* 113 Idaho 411, 414, 744 P.2d 795, 798 (Ct.App.1987). The defendant's failure to present and support a plausible reason will dictate against granting withdrawal, even absent prejudice to the prosecution. *Dopp,* 124 Idaho at 485, 861 P.2d at 55; *Henderson,* 113 Idaho at 414, 744 P.2d at 798.

■ McFarland claims that the results of his psychological evaluation cast doubt on whether he entered the pleas knowingly, voluntarily and intelligently. As support, McFarland quotes portions of his psychological evaluation. In particular, McFarland points out that he had an I.Q. score of 72,

which, according to Dr. Domitor, placed him "within the range of borderline mental retardation." McFarland argues that he had a significant verbal memory deficit and a reading ability at the first percentile level. Furthermore, according to the evaluation, "it will be necessary for his attorney to repeat important information on a frequent basis so that Mr. McFarland might be able to retain this. His ability to understand legal abstractions is impaired and so information must be presented in as concrete a manner as possible."

On November 16, 1992, the district court held a change of plea conference, and the parties submitted a written plea agreement. McFarland was represented by counsel and his sister was also present. Under the agreement, McFarland was to enter *Alford* pleas to the Bart murder and robbery and an unconditional guilty plea to the Arnold robbery. After ensuring that McFarland signed the agreement and properly initialed the appropriate sections and certain modifications to the agreement, the district court read pertinent parts of the agreement to McFarland. The district court frequently stopped and asked McFarland whether he understood specific sections of the agreement and whether the sections correctly stated what was agreed upon. McFarland's answer was usually, "Yes, your Honor," or "Yes, sir." The district court then read all three counts, but only took McFarland's *Alford* pleas to the Bart murder and robbery. In regard to the Arnold robbery, the district court asked McFarland:

> THE COURT: Now, as to Count 3 [the Arnold Robbery], is that the way that [it] happened.
>
> [MCFARLAND]: No, it is not, your Honor.
>
> THE COURT: What is different about this?
>
> . . . .
>
> [MCFARLAND]: I did not grab and slap Julie Arnold, your Honor. It happened so quick, I was behind the car, and I asked Julie Arnold if she could give me and Dan a ride to my house up Pine-

hurst, Pine Creek, and she said, "No, my—my car is full of groceries."

I said, "Okay."

I stepped a little tiny bit away, Dan grabbed the purse, she grabbed a hold of me, and then—then Dan took off running and I—I took off with him.

And he was—he was about from here to the wall ahead of me, and what's his name started chasing me, and I stopped and Dan stopped and threw the purse underneath the building.

The district court interpreted McFarland's guilty plea to the Arnold robbery as an *Alford* plea and amended the plea accordingly. McFarland expressed no objection to that interpretation. The district court accepted the written plea agreement, which was signed by McFarland, his counsel and his sister, finding that McFarland's pleas were informed and voluntary.

After McFarland's case was remanded to the district court and the psychological evaluation had been conducted, McFarland moved to withdraw his pleas, claiming that they were not knowingly, intelligently, and voluntarily made. In denying McFarland's motion, the district court found:

> [N]o grounds exist justifying defendant's withdrawal of his pleas of guilty. Defendant was informed clearly of the charges, was informed of the consequences of guilty pleas, and understood both. He understood the nature of the charges as well as the specifics thereof, and the Court is not persuaded by his subsequent professions of not understanding what was taking place during his appearances in Court.

We agree. We are unpersuaded that McFarland has presented a just reason for withdrawal of his pleas. In reviewing the transcripts of the plea conference, McFarland appeared to be cognizant of the proceedings which were taking place. While McFarland's answers were generally short, they were clear and responsive to the questions asked. In particular, McFarland's exchange with the district court pertaining to count three of the plea agreement indicates that McFarland understood the district court and the nature of the proceedings. Furthermore, McFarland acknowledged that both his attor-

ney and his sister explained his rights and read and explained the plea agreement to him. In consideration of the foregoing, the district court did not abuse its discretion in denying McFarland's motion in this regard.

■ McFarland's next basis for withdrawal of his *Alford* pleas is that, because a psychological evaluation was not conducted prior to entering into the plea agreement, defense counsel lacked sufficient information about McFarland's psychological abilities to provide competent representation. The state asserts that McFarland's argument is essentially a claim of ineffective assistance of counsel and is being raised for the first time on appeal. To the extent that McFarland challenges defense counsel's competency, we agree with the state's contention, and will not address that issue. *State v. Hadley,* 122 Idaho 728, 731, 838 P.2d 331, 334 (Ct.App. 1992).

Regarding McFarland's argument, however, that failure to have the evaluation completed prior to the entry of the pleas is just reason for their withdrawal, we note initially that he has not established he was entitled to a psychological evaluation prior to entering into the plea agreement. Although McFarland moved for such an evaluation before entering his *Alford* pleas, the district court did not grant the motion. McFarland did not challenge the district court's failure to grant the motion on appeal. Further, even though no psychological evaluation was conducted on McFarland prior to entering into the plea agreement, the record indicates that McFarland's counsel was aware that McFarland suffered from a mental disability. Because of McFarland's mental limitations, defense counsel obtained the assistance of McFarland's sister who helped explain the proceedings, including the plea agreement, to McFarland. Accordingly, we conclude McFarland has failed to demonstrate that the district court abused its discretion in denying his motion to withdraw his pleas in this regard.

### C. Sentence Review

■ An appellate review of a sentence is based on an abuse of discretion standard.

*State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of if it is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982).

### 1. Consideration of the psychological evaluation

█ McFarland asserts that because his sentences after remand were identical to the original sentences, which were imposed without the benefit of the psychological evaluation, the district court did not give proper weight to the psychological evaluation in resentencing. McFarland argues that the district court did not consider his potential for rehabilitation and his ability to be deterred from future criminal conduct.

In resentencing McFarland, the district court stated:

> I have reviewed the psychological evaluation. Indeed, the purpose for remand for resentencing was to primarily consider this. The law doesn't preclude our consideration of anything additional and I have heard and I do not disregard the testimony from families of Mr. Bart, the letters from families of Bobby, but in review of the psychological evaluation I can find nothing in there to persuade the Court that any modification of the original sentence is appropriate.

The district court then resentenced McFarland to the same terms as originally imposed.

Although the evaluation did provide some positive insight of McFarland's ability to rehabilitate, it also contained disturbing comments throughout noting McFarland's propensity for violence. Doctor Domitor in-

dicated that McFarland would not be a danger to the community if McFarland refrained from abusing substances. However, the doctor also stated that because of McFarland's limited personality resources and intellectual abilities, McFarland may not be able to control his aggressive impulses. In consideration of McFarland's admitted history of substance abuse and the comments made by Dr. Domitor, the district court concluded that the same sentence was appropriate. We hold that the district court did not err in the weight given to the psychological evaluation.

### 2. Comparison to co-defendant's sentence

█ McFarland argues that the sentences he received were unfairly out of proportion to the sentences received by his co-defendant, Dan Graff. McFarland claims he and Graff were similarly situated when they came before the district court. McFarland also argues that they had similar backgrounds and criminal records, and were both under the influence of alcohol and drugs when they committed the crimes.

The state requests that this Court refuse to consider McFarland's claim because of the principle of individualized sentencing. In *State v. Pederson,* 124 Idaho 179, 183, 857 P.2d 658, 662 (Ct.App.1993), this Court responded to the defendant's claim for comparative sentencing as follows:

> In essence, [the defendant] invites us to engage in an exercise in comparative sentencing review. We decline this invitation. It is well settled that not every offense in like category calls for identical punishment; there may properly be a variation in sentences between different offenders, depending on the circumstances of the crime and the character of the defendant in his or her individual case. *State v. Seifart,* 100 Idaho 321, 597 P.2d 44 (1979); *State v. Smith,* 123 Idaho 290, 847 P.2d 265 (Ct. App.1993); *State v. Cambron,* 118 Idaho 624, 798 P.2d 469 (Ct.App.1990); *State v. Arnold,* 115 Idaho 736, 769 P.2d 613 (Ct. App.1989); *State v. Puga,* 111 Idaho 874, 728 P.2d 398 (Ct.App.1986).

*Id.* In light of *Pederson,* we decline McFarland's invitation to conduct a comparative review of his sentence. Thus, we conclude that the district court did not err in sentencing McFarland.

### III.

### CONCLUSION

We conclude that McFarland was required to show a just reason for withdrawal of his *Alford* pleas. We hold that the district court did not abuse its discretion in denying McFarland's motion to withdraw his pleas. We also hold that the district court did not abuse its discretion in sentencing McFarland. McFarland's judgments of conviction and sentences are affirmed.

WALTERS, C.J., and LANSING, J., concur.