4 P.3d 570

STATE of Idaho, Plaintiff–Respondent,

v.

James Calvin MILLER, Defendant–Appellant.

No. 25134.

Court of Appeals of Idaho.

June 16, 2000.

Clark & Feeney, Lewiston, for appellant. Scott D. Gallina argued.

Hon. Alan G. Lance, Attorney General; T. Paul Krueger, II, Deputy Attorney General, Boise, for respondent. T. Paul Krueger, II, argued.

PERRY, Chief Judge.

James Calvin Miller appeals from his judgment of conviction for three counts of burglary. I.C. § 18–1401. For the reasons set forth below, we affirm.

## I.

## BACKGROUND

Miller was originally charged with six counts of burglary. On December 19, 1995, pursuant to a plea agreement with the state, Miller pled guilty to three counts of burglary, and the state dismissed the remaining charges. Miller failed to appear at his sentencing hearing due to his incarceration on other charges in the state of Washington. On February 8, 1996, Miller was found guilty in Washington of four counts of possession of stolen property. On March 11, Miller was found guilty in Washington of burglary in the second degree, making or having burglar tools, and theft in the third degree. Finally, on May 22, Miller was found guilty in Washington of assault in the third degree. When sentenced for each of those convictions, the Washington courts considered Miller's Idaho burglary offenses in fashioning Miller's sentences.

Eventually, Miller was transported back to Idaho to be sentenced. Miller requested appointment of new counsel, and the district court appointed the public defender. Miller then moved to withdraw his guilty pleas, alleging that at the time of his pleas he was not informed that his Idaho offenses could be used against him for sentencing purposes in his criminal cases in Washington. After a hearing on the matter, Miller's motion to withdraw his guilty pleas was denied.

Subsequently, Miller moved for dismissal of the charges because he had not been timely sentenced in compliance with the interstate agreement on detainers (I.A.D.). The district court denied that motion. Miller was sentenced to concurrent unified seven-year sentences, with four years fixed, for each of the three counts of burglary. These sentences were ordered to run consecutive to the sentences in Miller's Washington cases. Miller appeals.

## II.

## ANALYSIS

### A. Motion to Withdraw Guilty Pleas

■ Miller argues that the district court's denial of his motion to withdraw his guilty pleas was an abuse of discretion. The decision to grant a motion to withdraw a guilty plea lies in the discretion of the district court. *State v. McFarland,* 130 Idaho 358, 361, 941 P.2d 330, 333 (Ct.App.1997). Withdrawal of a guilty plea before sentence is imposed is not an automatic right, and the defendant has the burden of proving that the plea should be allowed to be withdrawn. *State v. Dopp,* 124 Idaho 481, 485, 861 P.2d 51, 55 (1993); *McFarland,* 130 Idaho at 362, 941 P.2d at 334. A defendant seeking to withdraw a guilty plea before sentencing must first show a just reason for withdrawing the plea. *Dopp,* 124 Idaho at 485, 861 P.2d at 55; *McFarland,* 130 Idaho at 362, 941 P.2d at 334. Once the defendant has met this burden, the state may avoid a withdrawal of the plea by demonstrating the existence of prejudice to the state. *State v. Henderson,* 113 Idaho 411, 414, 744 P.2d 795, 798 (Ct.App.1987). The defendant's failure to present and support a plausible reason to withdraw his or her guilty plea will dictate against granting withdrawal, even absent prejudice to the prosecution. *Dopp,* 124 Idaho at 485, 861 P.2d at 55; *Henderson,* 113 Idaho at 414, 744 P.2d at 798.

Miller asserts that he was not informed of the possibility that the Washington courts could use his Idaho offenses in fashioning his sentences in that state. He asserts that this use was a "direct" consequence of his Idaho guilty pleas. Thus, he contends that because he was not informed of this consequence at the time of his guilty pleas, the district court violated I.C.R. 11(c), and his motion to withdraw his guilty pleas should have been granted.

■ Idaho Criminal Rule 11(c) sets forth the minimum requirements that a trial court must follow in accepting a guilty plea. If the record indicates that the trial court followed the requirements of I.C.R. 11(c), this is a prima facie showing that the plea is voluntary and knowing. *Ray v. State,* 133 Idaho 96, 99, 982 P.2d 931, 934 (1999). Among other things, before a guilty plea can be accepted, the defendant must be informed of the consequences of his or her plea, including minimum and maximum punishments, and other *direct* consequences which may apply. I.C.R. 11(c)(2). A consequence of a guilty plea is direct where it presents a definite, immediate and largely automatic effect on the defendant's range of punishment. *United States v. Kikuyama,* 109 F.3d 536, 537 (9th Cir.1997). *See also State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062, 1075 (1994). However, I.C.R. 11(c) does not require that the defendant be informed of the *collateral* consequences of his or her guilty plea. *Carter v. State,* 116 Idaho 468, 468, 776 P.2d 830, 830, (Ct.App.1989). A contingent possibility resulting from a guilty plea is not a direct consequence embraced by Rule 11. *See Id.* at 469, 776 P.2d at 831,

A conviction's possible enhancing effect on subsequent sentences has been held to be "merely a collateral consequence of a guilty plea." *King v. Dutton,* 17 F.3d 151, 153 (6th Cir.1994). We find no cogent reason, nor does Miller offer one, why the rule should be different in a case where no conviction has yet been entered and a different jurisdiction chooses to use the fact that the defendant has pled guilty to other offenses in fashioning its sentence.

We also find the reasoning in *King* instructive in our determination of whether the use, by the Washington trial courts, of Miller's Idaho offenses was a direct consequence of his guilty pleas. The facts in *King* are analogous to those in the instant case. In *King,* the defendant pled guilty in Grainger County

at a time that he had been "bound over to," but not yet indicted by, a Knox County grand jury. Subsequently, King was prosecuted in Knox County and his Grainger County convictions were used, in part, to fashion his sentence in Knox County. In this case, Miller pled guilty in Idaho at a time when charges were pending against him in Washington. After being found guilty in Washington, Miller's Idaho offenses were used in fashioning his Washington sentences. Like King, Miller moved to withdraw his guilty pleas on the ground that he was not informed that the convictions arising from those pleas could be used against him in another jurisdiction. The *King* court, in concluding that the use by Knox County of his Grainger County convictions was a collateral consequence of King's guilty pleas, noted that: (1) the prosecutor in Knox County had the discretion to decide whether to make a plea offer and then King had the discretion to decide whether to make a plea; and (2) King could have been acquitted.

■■■ In the instant case, at the time of his guilty pleas in Idaho, Miller had yet to be tried for his crimes in Washington. Miller *could have* been afforded the benefit of plea agreements in Washington which Miller *could have* either accepted or declined. Terms of those agreements *could have* included sentencing recommendations on the part of the state or agreements by the state to recommend that the Washington trial courts not use Miller's Idaho offenses when they fashioned his sentences. Additionally, Miller *could have* been acquitted of the Washington charges. Thus, it was only a contingent possibility that his Idaho offenses would be considered in fashioning his sentences in Washington. The use of Miller's Idaho guilty pleas in Washington was not a "definite, immediate, and largely automatic" consequence of his guilty pleas in Idaho. Therefore, Miller has not shown that the district court failed to comply with I.C.R. 11(c) when it accepted his guilty pleas.

■■■ We further note that the due process clause of the Idaho Constitution does not require that a misdemeanor defendant be notified of the possibility that a conviction may be used to enhance the penalties of any subsequent convictions. *Williams v. State,* 132 Idaho 437, 439, 974 P.2d 83, 85 (Ct.App. 1998). "The value of explaining every possible legal consequence of a conviction to a defendant is outweighed by the immense burden such a requirement would place on courts. Furthermore, a general warning [regarding the possible enhancing effects of a conviction] would be of little use to defendants." *Id.* Although *Williams* addressed the possible enhancing effects of a *misdemeanor conviction,* we find its reasoning equally applicable to the instant case. Accordingly, Miller has failed to demonstrate that the district court abused its discretion when it denied his motion to withdraw his guilty pleas.

## B. Motion to Dismiss

Miller argues that the I.A.D. applies to sentencing detainers. Therefore, he asserts that the district court erred when it denied his motion to dismiss based on a violation of the I.A.D. because he was not sentenced within the requisite time frame set forth therein.

Although addressed by several of our sister states, this is a case of first impression in Idaho. The I.A.D. was adopted in Idaho in 1971. *See* 1971 Idaho Sess. Laws Ch. 167 at 790. The I.A.D. is an interstate compact authorized by Congress to provide a cooperative agreement between party states on detainers. *See Cuyler v. Adams,* 449 U.S. 433, 435–42, 101 S.Ct. 703, 705–09, 66 L.Ed.2d 641, 646–50 (1981); I.C. § 19–5001(a). The I.A.D., as a congressionally sanctioned interstate compact, is a federal law subject to federal construction. *New York v. Hill,* 528 U.S. 110, ——, 120 S.Ct. 659, 662, 145 L.Ed.2d 560, 564 (2000).

Idaho Code Section 19–5001(c)(1) states:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any *untried indictment, information or complaint* on the basis of which a detainer has been lodged against the prisoner, he shall be *brought to*

*trial* within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

(Emphasis added.). The I.A.D. further states:

If *trial* is not had on any *indictment, information or complaint* ... such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

I.C. § 19–5001(d)(5) (emphasis added).

■■■■■ Miller's appeal requires us to interpret a statute—a question of law over which we have free review. *State v. Martinez*, 126 Idaho 801, 803, 891 P.2d 1061, 1063 (Ct.App.1995). The interpretation of a statute begins with an examination of its literal words. *State v. Watts*, 131 Idaho 782, 784, 963 P.2d 1219, 1221 (Ct.App.1998). Generally, words and phrases are construed according to the context and the approved usage of the language. I.C. § 73–113; *State v. Baer*, 132 Idaho 416, 417–18, 973 P.2d 768, 769–70 (Ct.App.1999). When a statute is clear and unambiguous, it must be interpreted in accordance with its language, courts must follow it as enacted and a reviewing court may not apply rules of construction. *State v. Wiedmeier*, 121 Idaho 189, 191, 824 P.2d 120, 122 (1992); *State v. Schumacher*, 131 Idaho 484, 485, 959 P.2d 465, 466 (Ct.App.1998).

After an individual pleads guilty, there is no longer an untried indictment, information or complaint for the district court to dismiss. Indeed, a guilty plea obviates the need for a trial. By its plain language, I.C. § 19–5001 applies only to an *untried indictment, information or complaint*, and a proper request pursuant to the I.A.D. requires the issuing state to bring that individual to *trial*. Moreover, the I.A.D., by its express terms, does not require that a trial be *completed* within 180 days after the prisoner is returned to Idaho. Therefore, the plain language of the I.A.D. militates against its application to sentencing detainers.

Miller relies on *Tinghitella v. California*, 718 F.2d 308 (9th Cir.1983) in support of his argument that the I.A.D. applies to sentencing detainers. In that case, relying on the Sixth Amendment definition of "trial" and the policy underlying the drafting of the I.A.D., the *Tinghitella* Court determined that a sentencing detainer was governed by the I.A.D. However, the issue in that case was whether Tinghitella had a right, pursuant to California law, to be returned to that state for his sentencing. As the *Tinghitella* court explicitly noted, Tinghitella did not properly invoke the protections of the I.A.D. Therefore, any statement by the court addressing the applicability of the I.A.D. to sentencing detainers is *dicta* and of no consequence to the outcome of the instant case.

Moreover, after the decision in *Tinghitella*, the United States Supreme Court decided *Carchman v. Nash*, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). The *Carchman* Court held that the I.A.D. did not apply to detainers based on probation violation charges. In so holding, the Court noted that the language of the I.A.D. makes clear that the phrase "untried indictment, information or complaint" refers to *criminal charges pending against a prisoner. Id.* at 725, 105 S.Ct. at 3406, 87 L.Ed.2d at 523. Contrary to the *Tinghitella* Court's analysis, only after analyzing the plain language of the I.A.D. did the *Carchman* Court consider whether the legislative history required deviation from the legislative intent expressed in the plain language of the statute.

In analyzing whether the legislative history of the I.A.D. required that it be applied to probation revocation detainers, the *Carchman* Court recognized that adoption of the I.A.D. was motivated, in part, by the practice of filing detainers based on untried criminal charges that had little basis. The I.A.D. forced the state lodging the detainer either to drop the charge and resulting detainer or to bring the prisoner to trial. The Court also recognized that the uncertainties associated with probation violation detainers are less severe than those associated with criminal charge detainers because the factual issue of guilt of a probation violation is conclusively established by a subsequent criminal conviction. Finally, the *Carchman* Court recognized that because a prisoner subject to a probation violation detainer cannot relitigate the factual issue of guilt, the most serious of the interests of the accused in obtaining a speedy disposition of outstanding criminal charges—limiting the possibility that a long delay will impair the prisoner's ability to defend himself or herself—is unlikely to be strongly implicated in the probation violation detainer context. The foregoing reasoning applies equally to sentencing detainers because the basis for the charge has been conclusively established by the prisoner's guilty plea, and prisoners being held on such detainers are not able to relitigate their guilt on the conviction that is the basis of the detainer.

Finally, the vast majority of jurisdictions that have considered whether the I.A.D. applies to sentencing detainers have concluded that it does not. *See, e.g., State v. Burkett,* 179 Ariz. 109, 876 P.2d 1144 (Ct.App.1993); *Moody v. Corsentino,* 843 P.2d 1355 (Colo. 1993); *Bogue v. Fennelly,* 705 So.2d 575 (Fla. Dist.Ct.App.1997); *People v. Barnes,* 93 Mich.App. 509, 287 N.W.2d 282 (1979); *Lancaster v. Stubblefield,* 985 S.W.2d 854 (Mo.Ct. App.1998), *cert. denied,* 528 U.S. 854, 120 S.Ct. 134, 145 L.Ed.2d 115 (1999); *State v. Sparks,* 104 N.M. 62, 716 P.2d 253 (Ct.App.

1986); *State v. Barnes,* 14 Ohio App.3d 351, 471 N.E.2d 514 (1984); *State v. Leyva,* 906 P.2d 910 (Utah Ct.App.1995); *State v. Barefield,* 110 Wash.2d 728, 756 P.2d 731 (1988); *State v. Grzelak,* 215 Wis.2d 577, 573 N.W.2d 538 (1997). We note that all but one of the above cases were decided after the Supreme Court's decision in *Carchman.* We further note that *Burkett* and *Barefield* were decided by state courts which are within the jurisdiction of the Ninth Circuit Court of Appeals and that both were issued subsequent to *Tinghitella.*

Based on the foregoing, we hold that in Idaho the I.A.D., as set forth in I.C. §§ 19–5001 to –5008, is inapplicable to sentencing detainers. Therefore, the district court did not err in denying Miller's motion to dismiss based on an alleged violation of the I.A.D.[1]

## III.

## CONCLUSION

We hold that the potential use, by another state's trial court for the purposes of sentencing, of an Idaho defendant's guilty plea is a collateral consequence of that plea. Miller failed to demonstrate just reason for permitting the withdrawal of his guilty pleas and, thus, the district court did not err in denying Miller's motion to withdraw those pleas. Further, we hold that I.C. § 19–5001 does not apply to sentencing detainers. Therefore, the district court did not err in denying Miller's motion to dismiss. Accordingly, Miller's judgment of conviction for three counts of burglary is affirmed.

Judge SCHWARTZMAN and Judge Pro Tem R.B. WOOD concur.

1. We find it unnecessary to address the state's contention that Miller failed to properly invoke the protections of the I.A.D. In addition, we note that after being returned to Idaho, Miller requested a change of counsel and moved to withdraw his guilty plea. Thus, the record re-

flects that Miller's actions may have, in some part, caused the delay in his sentencing which he now complains of. However, based on our conclusion, we find it unnecessary to address the state's argument that Miller waived the protections of the I.A.D. by his actions.