**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38794**

| | | |
|---|---|---|
| EARL WAYNE STEELE, | ) | |
| | ) | **2012 Opinion No. 54** |
| Petitioner-Appellant, | ) | |
| | ) | **Filed: October 25, 2012** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

Order dismissing petition for post-conviction relief, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett LLP; Deborah A. Whipple, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

_____

WALTERS, Judge Pro Tem

Earl Wayne Steele appeals from the denial of his petition for post-conviction relief following an evidentiary hearing. He asserts that his *Alford*[1] plea to one count of sexual abuse of a child was not made knowingly or intelligently because he did not understand the consequences of his plea. According to Steele, those consequences include a negative psychosexual evaluation report, the imposition of a longer sentence, and parole "ineligibility." He also asserts that he received ineffective assistance of counsel because his attorney did not inform him of those consequences. We affirm.

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

1

# I.

# BACKGROUND

Steele was indicted on three counts of lewd conduct with a minor under sixteen, Idaho Code § 18-1508, for alleged manual-to-genital contact with his daughter, and one count of sexual abuse of a child under the age of sixteen years, I.C. § 18-1506, for a sexual request he allegedly made to his daughter's friend. Steele asserted that he was unable to remember any of the alleged incidents as a result of heavy intoxication. Pursuant to a plea agreement, the State amended Count I of the indictment from a charge of lewd conduct to a charge of sexual abuse, dismissed the remaining charges, and agreed not to prosecute Steele on allegations that he abused two other children. Steele agreed to plead guilty without admitting a factual basis for his guilt pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). The district court accepted Steele's *Alford* plea upon the State's recitation of the facts and set the matter for sentencing.

During the presentence investigation and Steele's psychosexual evaluation (PSE), Steele expressed remorse for his alcoholism, but equivocated on his acceptance of responsibility for the alleged sexual abuse. At the sentencing hearing, Steele stated, "I would like to apologize to my daughter. If I had touched her inappropriately, I didn't mean to or realize that I had. I had wrote a letter here. Your Honor, while thinking I was--it was truly possible of doing such an offense in a black out . . . ."[2] The district court rejected Steele's assertion that he was unable to remember any of the abuse as a result of intoxication because the conduct spanned multiple years. The district court then sentenced Steele to a unified term of twenty-five years including a fixed term of seven years, but subsequently reduced the sentence to a term of fifteen years with a seven-year determinate portion because the original sentence exceeded the statutory maximum punishment.

---

[2]     In a handwritten letter to the district court, Steele wrote:

> I may have accidentally touch [sic] my daughter in an inappropriate way while in a blackout, confused of where I was, thinking I'm in my bedroom trying to crawl into my bed. I'm trying to grasp on how my daughter would of thought about her father. It's so hard to think that this could of ever happened. I would owe my daughter . . . the most deepest of apologys [sic]. If so, if my daughter could ever would ever find it in her heart to ever forgive me, I would make a promise to her and my family to never, ever take another drink of alcohol as long as I live.

Steele filed a petition for post-conviction relief and two amended petitions, each asserting numerous claims. As relevant to this appeal, Steele asserted that he was not informed, prior to the entry of his plea, that his *Alford* plea and subsequent denials of guilt would result in consequences including a negative psychosexual evaluation, the imposition of a harsher sentence than would have otherwise been imposed, and the eventual denial of his parole. Steele's amended petition, which is less than clear, appears to frame each claim both as a due process violation and as a violation of his right to effective assistance of counsel. The district court denied Steele's petition following an evidentiary hearing. Steele appeals.

## II.

## STANDARD OF REVIEW

Steele asserts that all the allegations in his amended petition must be deemed to be true because the State did not file an answer to his amended petition.[3] Steele relies on *Hall v. State*, 126 Idaho 449, 451, 885 P.2d 1165, 1167 (Ct. App. 1994), in which this Court stated, "Allegations in an application for post-conviction relief must be deemed to be true until those allegations are controverted by the state." However, we have previously indicated that the "statement, frequently made in our opinions, that the allegations in a petition for post-conviction relief are deemed true until controverted by the State, refers only to the circumstance where the State has moved for summary disposition or the court has given notice of intent to summarily dismiss." *Griffin v. State*, 142 Idaho 438, 442, 128 P.3d 975, 979 (Ct. App. 2006). Steele's petition was not decided by way of summary disposition. Thus, the standard Steele cites is inapplicable.

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their

---

[3]     Steele filed a petition and two amended petitions. The State filed an answer to Steele's original petition and filed an answer and motion for summary dismissal in response to Steele's first amended petition, but did not file an answer to Steele's second amended petition.

testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

### III.

### ANALYSIS

Because a guilty plea by a criminal defendant waives certain constitutional rights, due process requires that a defendant's plea be entered voluntarily, knowingly, and intelligently. *State v. Heredia*, 144 Idaho 95, 97, 156 P.3d 1193, 1195 (2007); *State v. Colyer*, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976); *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). *Accord McCarthy v. United States*, 394 U.S. 459, 466 (1969). Therefore, the plea must be entered with a full understanding of what the plea connotes and of its consequences. *Ray v. State*, 133 Idaho 96, 99, 982 P.2d 931, 934 (1999); *State v. Mauro*, 121 Idaho 178, 180, 824 P.2d 109, 111 (1991). *Accord Boykin v. Alabama*, 395 U.S. 238, 244 (1969). However, Idaho appellate courts have long held that a defendant must only be informed of the direct consequences of a plea, as opposed to the collateral or indirect consequences. *Heredia*, 144 Idaho at 97, 156 P.3d at 1195; *Ray*, 133 Idaho at 99-101, 982 P.2d at 934-36; *State v. Huffman*, 137 Idaho 886, 887, 55 P.3d 879, 880 (Ct. App. 2002); *Jakoski v. State*, 136 Idaho 280, 285, 32 P.3d 672, 677 (Ct. App. 2001); *State v. Miller*, 134 Idaho 458, 460, 4 P.3d 570, 572 (Ct. App. 2000); *Carter v. State*, 116 Idaho 468, 468, 776 P.2d 830, 830 (Ct. App. 1989). *See also State v. Flowers*, 150 Idaho 568, 573, 249 P.3d 367, 372 (2011); *Hayes*, 146 Idaho at 355, 195 P.3d at 714; *State v. Shook*, 144 Idaho 858, 859, 172 P.3d 1133, 1134 (Ct. App. 2007). *Accord Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988). While it may be desirable to inform defendants of all foreseeable, albeit indirect, consequences of a plea, principles of due process do not impose such a burden on the courts. *Miller*, 134 Idaho at 461, 4 P.3d at 573; *Carter*, 116 Idaho at 469, 776 P.2d at 831. *See also Williams v. State*, 132 Idaho 437, 439, 974 P.2d 83, 85 (Ct. App. 1998).

Idaho appellate courts have also determined that the Sixth Amendment does not contain an implied duty for an attorney to inform his client of the collateral consequences of a guilty plea. *Ray*, 133 Idaho at 102, 982 P.2d at 937; *Retamoza v. State*, 125 Idaho 792, 796-97, 874 P.2d 603, 607-08 (Ct. App. 1994); *Jones v. State*, 118 Idaho 842, 844, 801 P.2d 49, 51 (Ct. App. 1990); *LaBarge v. State*, 116 Idaho 936, 939, 782 P.2d 59, 62 (Ct. App. 1989); *Carter*, 116 Idaho

at 469, 776 P.2d at 831. The overwhelming majority of courts from other jurisdictions have similarly concluded that defense counsel's failure to advise a client of the collateral consequence of a guilty plea does not constitute ineffective assistance of counsel. *Carter*, 116 Idaho at 469, 776 P.2d at 831. *See also D'Ambrosio v. State*, 146 P.3d 606, 621 (Haw. Ct. App. 2006); 5 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 21.4(d) at 816 (3d ed. 2007). We also emphasize that it is generally desirable for counsel to advise their clients of significant collateral consequences of pleading guilty, but what is desirable or optimal does not define that which is constitutionally mandated. *Retamoza*, 125 Idaho at 797, 874 P.2d at 608.

Steele suggests that the distinction between direct and collateral consequences was abrogated by *Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473, 1481-82 (2010), for both due process and ineffective assistance of counsel claims. We disagree. In *Padilla*, the Supreme Court considered whether an attorney's incorrect advice that a guilty plea to a drug charge would not result in statutorily required deportation constituted ineffective assistance of counsel. The Supreme Court stated:

> We . . . have never applied a distinction between direct and collateral consequences to define the scope of constitutionally "reasonable professional assistance" required under [*Strickland v. Washington*, 466 U.S. 668 (1984)]. Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation.
> . . . .
> Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation.

*Id.* at ___, 130 S. Ct at 1482. Because the Court explicitly stated that it was not deciding whether the distinction between direct and collateral consequences defines the scope of effective assistance of counsel, the holding of numerous Idaho cases that an attorney is not required to inform a client of collateral consequences of a plea was not abrogated by *Padilla* except in the deportation context. Furthermore, the Supreme Court did not address whether the distinction between direct and collateral consequences is appropriate under a due process analysis. *See id.* Therefore, *Padilla* similarly did not abrogate the distinction between direct and collateral consequences in the due process context. *See United States v. Delgado-Ramos*, 635 F.3d 1237, 1240 (9th Cir. 2011). For purposes of determining whether due process requires that a defendant

5

be informed of particular consequences of a plea in order to make an informed decision on whether to plead guilty, and for purposes of determining whether counsel's failure to advise a client on the particular consequences of a plea other than deportation constitutes ineffective assistance of counsel, the appropriate inquiry continues to be whether the particular consequences are direct or collateral.

"A consequence is direct if it presents 'a definite, immediate and largely automatic effect on the defendant's range of punishment.'" *Huffman*, 137 Idaho at 887, 55 P.3d at 880 (quoting *Miller*, 134 Idaho at 460, 4 P.3d at 572). *Accord United States v. Adams*, 432 F.3d 1092, 1095 (9th Cir. 2006); *Torrey*, 842 F.2d at 236. In determining whether a consequence is direct or collateral, Idaho courts have also considered factors including the defendant's power to prevent the consequence, the punitive or remedial nature of the consequence, and the amount of control the sentencing judge has over imposing the consequence. *Heredia*, 144 Idaho at 98, 156 P.3d at 1196; *Ray*, 133 Idaho at 99-101, 982 P.2d at 934-36.

Steele asserts that his plea was not entered voluntarily, knowingly, and intelligently and that he received ineffective assistance of counsel because he was not informed of the direct consequences of his *Alford* plea which, according to Steele, include a negative psychosexual evaluation, the imposition of a longer sentence, and parole ineligibility. We address each consequence in turn, and apply the above standards to determine whether each consequence is a direct or collateral consequence of Steele's *Alford* plea.

## A.    Negative PSE

Steele asserts that a negative PSE--specifically, the conclusions that Steele presents a high risk to reoffend and is likely not amenable for sexual offender treatment--was a direct consequence of his *Alford* plea. It is unclear whether Steele is asserting that the PSE itself is an independent consequence of his plea, or whether he is asserting that the PSE resulted in an increased sentence, and that the increased sentence is a consequence of his plea. To the extent that Steele is asserting that the PSE itself is an independent consequence of his plea, we first note that the PSE is not punishment. Unlike other consequences that Idaho courts have characterized as punitive, *see, e.g.*, *Heredia*, 144 Idaho at 98, 156 P.3d at 1196, a PSE is informational. Any conclusions or recommendations made therein are not binding on the court.

Additionally, the district court had no control over the PSE results and neither the district court nor counsel could have predicted the results of the PSE with any degree of certainty. The

6

very nature of a PSE is to provide the sentencing court with an independent professional opinion from a certified evaluator based on information extending well beyond the information that may have been provided to the court during a trial or plea hearing. *See* I.C. § 18-8316. During an evidentiary hearing on Steele's post-conviction claims, Steele's trial attorney testified that he had previously read other PSEs conducted in *Alford* situations and that he did not think that the defendants were always determined to be a high risk to reoffend. He also testified that he did not anticipate any "tension" between Steele's *Alford* plea and the PSE, and that he was surprised by the results of the evaluation because he found Steele to be remorseful. Steele did not present any evidence that when a defendant enters an *Alford* plea based on an alleged lack of memory, the psychosexual evaluator will definitely or automatically conclude that the defendant is not amendable to treatment or that the defendant presents a high risk to reoffend. We conclude that the particular results of a PSE are not definite or largely automatic consequences of an *Alford* plea.

The negative results of Steele's PSE were not a direct consequence of his plea both because a PSE is not punitive and because the negative results were not a definite, immediate, and largely automatic consequence over which the judge exercised control.[4]

**B.      Imposition of Longer Sentence**

At Steele's sentencing hearing, the district court stated, "The most problematic of all of this is the fact that you simply are not accepting responsibility for your conduct." Thus, Steele asserts that he received a longer sentence, as a direct consequence of his *Alford* plea, than he would have received if he had been willing or able to admit his guilt.

It is well established that due process and Idaho Criminal Rule 11 require that a defendant be informed, prior to the entry of a guilty plea, of the minimum and maximum potential sentence, not of the actual sentence that the court will impose within that range. *E.g.*, I.C.R. 11(c); *Heredia*, 144 Idaho at 97, 156 P.3d at 1195; *Ray*, 133 Idaho at 99, 982 P.2d at 934.

---

[4]      Furthermore, we question whether the results of the PSE were a consequence of Steele's *Alford* plea at all, and not the consequences of subsequent denials of guilt made during the evaluation. Steele asserts that the consequences of an *Alford* plea should include the consequences of all subsequent assertions of innocence insofar as those subsequent assertions merely maintain the same position. However, Steele's *Alford* plea was based on an assertion that he could not remember the alleged incident, but his subsequent statements later evolved into affirmative assertions of innocence. Thus, Steele was not merely maintaining the position he asserted at the entry of his plea.

Regardless of whether a defendant is convicted at trial, enters an *Alford* guilty plea, or pleads guilty and admits the factual basis for his guilt, the potential sentence for any particular crime is the same. In this case, the district court satisfied its obligation to inform Steele of the maximum potential sentence when it correctly informed Steele, prior to the entry of his plea, that by pleading guilty to sexual abuse of a child he could be sentenced to a term of incarceration of up to fifteen years. I.C. § 18-1506 (2005).[5] Steele appears to suggest that the entry of an *Alford* plea necessarily results in the imposition of a minimum sentence at or near the top of the statutorily prescribed sentencing range. However, Steele has not provided any authority in support of this argument, and thus we do not consider it. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

We also reject the proposition that the entry of an *Alford* plea necessarily results in a longer sentence than would be imposed if the defendant admits a factual basis for his or her guilt. In *State v. Howry*, 127 Idaho 94, 896 P.2d 1002 (Ct. App. 1995), we considered the relationship between an *Alford* plea and the sentencing process. In that case, the defendant entered an *Alford* plea while asserting that he was, in fact, innocent. At sentencing, the district court considered the defendant's "steadfast refusal to recognize culpability and his utter lack of remorse." *Howry*, 127 Idaho at 95, 896 P.2d at 1003. The defendant asserted that such consideration was inappropriate after the entry of an *Alford* plea because doing so would require a defendant who has not admitted guilt to behave as if he were guilty in order to escape a harsher sentence. *Howry*, 127 Idaho at 95, 896 P.2d at 1003. This Court held that "once the *Alford* plea is entered, the court may treat the defendant, for purpose of sentencing, as if he or she were guilty." *Howry*, 127 Idaho at 96, 896 P.2d at 1004. Furthermore, we held:

> Although an *Alford* plea allows a defendant to plead guilty amid assertions of innocence, it does not require a court to accept those assertions. The sentencing court may, of necessity, consider a broad range of information, including the evidence of the crime, the defendant's criminal history and the demeanor of the defendant, including the presence or absence of remorse. Such considerations play an important role in the court's determination of the rehabilitative potential of the defendant.

---

[5] Idaho Code section 18-1506 was subsequently amended to allow a sentence of up to twenty-five years. 2006 Idaho Sess. Laws, ch. 178, § 3 at 546.

*Howry*, 127 Idaho at 96, 896 P.2d at 1004. Our holding in *Howry* recognized the district court's discretion and fact-finding role when sentencing a defendant who has entered an *Alford* plea. In that role, the district court may assess the credibility of a defendant's assertion that he or she has no memory of the charged conduct. Although the district court found Steele's assertions that he lacked memory of the charged conduct to be incredible in this case, and treated his failure to accept responsibility and lack of remorse for his sexual conduct as an aggravating factor at sentencing, such a result is not mandated as a result of every *Alford* plea. Instead, the sentencing court is tasked with creating an individualized sentence. *Howry*, 127 Idaho at 95, 896 P.2d at 1003. *See also State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982); *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). It is undisputed that the possible imposition of sentence is a direct consequence of an *Alford* plea and that Steele was correctly and adequately informed that his *Alford* plea could result in the imposition of a sentence of up to fifteen years.

Steele also asserts that his *Alford* plea resulted in a harsher sentence because, according to Steele, he has no chance of being paroled absent an admission of his guilt, and thus that his unified sentence of fifteen years with a seven-year determinate portion has, in effect, been transformed into a fifteen-year fixed sentence. In essence, Steele is asserting that the district court intended only a seven-year fixed sentence, but that he will in fact serve a fifteen-year fixed sentence. However, even if we were to assume that Steele will be denied parole, the denial of parole does not constitute a sentence increase. There is no constitutionally-protected right of parole, no legitimate expectation of parole, and no presumption that a prisoner is to be released after serving the determinate portion of his sentence. *Warren v. Craven*, 152 Idaho 327, 331-32, 271 P.3d 725, 729-30 (Ct. App. 2012).

**C.     Denial of Parole**

Finally, Steele asserts that the denial of parole is a direct consequence of his *Alford* plea.- Steele has not yet applied for or been denied parole, and Steele presented no evidence during the post-conviction evidentiary hearing that his parole will be denied in the future as a result of his *Alford* plea. On appeal, Steele cites to three law review articles that discuss the complications

9

presented by *Alford* pleas.[6]  However, even if this material had been presented to the district court below, it would not have addressed how an Idaho Parole Commission would treat a prisoner who asserts that he can neither admit nor deny the crime because he cannot remember it. *Cf. Bjorklund v. State*, 130 Idaho 373, 377, 941 P.2d 345, 349 (Ct. App. 1997) (rejecting claim that a plea was not voluntarily entered when the defendant was not informed of the "policy and practice" of the Parole Commission not to release sex offenders until they had served their entire sentences because the defendant presented no evidence that such a policy exists).  In the absence of any evidentiary support, dismissal of this claim was appropriate.

Furthermore, even if we assume that Steele would be denied parole, this Court has previously determined that parole consequences are not direct consequences of a plea.[7]  *State v. Banuelos*, 124 Idaho 569, 572, 861 P.2d 1234, 1237 (Ct. App. 1993); *Brooks v. State*, 108 Idaho 855, 858, 702 P.2d 893, 896 (Ct. App. 1985).  In *Brooks*, this Court recognized that "modern cases generally hold that informing a defendant of parole consequences may be desirable but is not a constitutional prerequisite to accepting a guilty plea."  *Id.  See also* 5 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 21.4(d) at p. 824-825 (3d ed. 2007) ("collateral consequences of which the defendant need not be warned . . . include such matters as . . . that successful completion of a treatment program may require certain admissions by the defendant").

None of the consequences Steele alleges, including a negative psychosexual evaluation, the imposition of a longer sentence, and parole ineligibility, are direct consequences of Steele's *Alford* plea.  Therefore, Steele has not demonstrated that his plea was not entered voluntarily, knowingly, and intelligently.  Additionally, counsel was not required to inform Steele of the

---

[6]     Daniel S. Medwed, *The Innocent Prisoner's Dilemma: Consequences of Failing to Admit Guilt at Parole Hearings*, 93 Iowa L. Rev. 491 (2008); Richard A. Rosen, *Reflections on Innocence*, 2006 Wis. L. Rev. 237 (2006); Bryan H. Ward, *A Plea Best Not Taken: Why Criminal Defendants Should Avoid the Alford Plea*, 68 Mo. L. Rev. 913, 932 (2003).

[7]     We also question whether the denial of parole based on Steele's assertions of innocence made at the parole hearing, or based on Steele's failure to complete sex-offender treatment programming due to assertions of innocence made during that programming would constitute a consequence of Steele's *Alford* plea at all, and not the consequences of subsequent denials of guilt.

alleged consequences because the Sixth Amendment does not contain an implied duty for an attorney to inform his client of the collateral consequences of a guilty plea.[8]

Steele was informed at his plea hearing that he could receive a sentence of incarceration of up to fifteen years, and ultimately received a unified sentence of fifteen years. If Steele serves the full term of his unified sentence, he still will have suffered no greater or additional consequence than the maximum punishment that was explained to him at the plea hearing.[9]

## IV.

## CONCLUSION

The consequences Steele has alleged, including a negative PSE, a harsher sentence, and denial of parole, are not among the direct consequences of a plea of which a defendant must be informed by the district court or counsel prior to the entry of a plea. Accordingly, Steele has not demonstrated that due process required him to be informed of these consequences in order for his plea to be entered knowingly, voluntarily, or intelligently, or that he received ineffective assistance of counsel. We affirm the dismissal of Steele's petition for post-conviction relief.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**

---

[8] We also note that Steele did not present any evidence that his attorney's conduct was objectively unreasonable under prevailing professional norms. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Schoger v. State*, 148 Idaho 622, 624, 226 P.3d 1269, 1271 (2010).

[9] Nonetheless, this case highlights problems that may be encountered when an *Alford* plea is entered in a sex offense case. Consequently, the best practice may be to avoid the entry of *Alford* pleas in sex offense cases.